# REIZENSTEIN & ASSOCIATES, P.A.
2828 CORAL WAY, SUITE 540
MIAMI, FL 33145
PHONE: 305-444-0755

_____

PHILIP L. REIZENSTEIN, ESQ.
BHAKTI KADIWAR, ESQ.


*DELIVERED VIA CASE MANAGEMENT/ELECTRONIC CASE FILES SYSTEM*


JULY 7, 2022

The Honorable J. Paul Oetken
United States District Judge
Southern District Of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY, 10007

     **RE:**    *United States v. Manuel Recio, Case No. 22-cr-281 (JPO)*

Dear Judge Oetken:

     I write in response to the Government's letter to this Court, dated June 27, 2022 [DE 27] seeking to disqualify me from representation of my client Manny Recio.

     After multiple conversations and emails, I have been unable to resolve this matter with counsel for the government. I respectfully request that the Court conduct a hearing where witnesses are called. I expect the defense would call one witness and would require fifteen to twenty additional minutes to present our view of this issue and respond to any questions raised by the Court.

**The Government's Theory of Conflict:**

     I take no issue with the proposition that a lawyer cannot be a witness in a case. I take great issue with the notion that there is any necessity to call me as a witness for the following reasons.

1

Central to this issue is an invoice from JEM to Manny Recio and Global Legal Consulting for $10,750.00 for work done for the defendant and the Greenspoon Marder Law firm in Miami in *United States v. Grobman,* 18-CR-20989 -Altman, Southern District of Florida. [Exhibit One].

The government makes two claims about the JEM invoice and the funds that went from Manny Recio and Global Legal Consulting to JEM: first, that no lawyers on the Grobman case in the spring of 2019 knew about JEM doing work for Recio on Grobman and that the invoice reflects work that was not actually performed by TFO-1; and second, once JEM was funded, the codefendant used the JEM bank account "for his own personal benefit." [Indictment, DE:1, p. 9].

The government contends that Manny Recio funded Company-1/JEM through two payments: $10,000.00 and then $10,750.00 "[i]n early 2019" [*Id*.], and that the $10,750.00 payment made to JEM by Manny Recio was from money paid to Manny Recio's private investigation company Global Legal Consulting for his work on the Grobman case.

The government believes that my absence of knowledge about the JEM invoice proves that TFO-1 did not work on the Grobman case and that as such, I would potentially be a witness in the trial on this issue.[1]

---

[1] As I understand the government's argument- to prove that the JEM invoice was fake, they would call attorney David Kubiliun from Greenspoon Marder, who was lead counsel and whose firm hired Recio, to testify that he was not aware of JEM and that Manny Recio used other individuals to work on the Grobman case. In fulfilling their obligation to prove their case beyond a reasonable doubt, it would not suffice to just call David Kubiliun; the government believes they would have to call me because I had some meetings at the Greenspoon firm in which Recio was present. However, their proof apparently stops with me, and I am not aware if the government intends to call any and every person who may have been in a meeting room at the Greenspoon firm when Manny Recio was present working on the Grobman case. As will be seen, this argument fails for multiple reasons including relevance and necessity.

**History of my representation of Manny Recio:**

I have been representing Manny Recio since the day the government served a search warrant and seized his phone in November 2019. On November 19, 2019, I had the first of multiple phone calls with the lead government prosecutor in this case.

I met Manny Recio when Attorney David Kubiliun asked me to assist his firm – Greenspoon Marder in Miami, Florida – with the forfeiture issues in *USA v. Johnny Grobman*. At the time I knew neither Manny Recio nor David Kubiliun; I was referred to David Kubiliun by another attorney. I had and have no personal knowledge of Recio's contract with the Greenspoon firm and Mr. Grobman. I had no supervisory role over what Manny Recio was assigned to do. I had no knowledge when the Greenspoon firm paid Manny Recio. I did not know what he was paid, when he was paid, or why he was paid.

**My Work On The Grobman Case:**

The Government claims that I "co-led the defense team" in Grobman's case. This is not correct.

Grobman was indicted on December 21, 2018. I was not hired by Grobman, nor did I have anything to do with his case until February 2019 when I was hired to primarily handle the forfeiture issues. *See e.g*, DE: 61, *USA v. Grobman*, Motion To Release Funds. As I became more involved in the case, I agreed to take on the task of obtaining Rule 17C subpoenas. *See* DE:101; 112; 118, *USA v. Grobman,* Motion For Rule 17C Subpoenas.

On August 28, 2019, the Greenspoon firm was discharged by Grobman, and Bruno Wolfenzon, Esq., an attorney and family member of Grobman, undertook the role as lead trial counsel along with the Miami law firm of Akerman LLP. When that occurred, Grobman and another member of his family asked me to stay on the case, which I did. However, there were

3

significant differences between myself and Grobman's new attorneys. As a result, I had limited official duties from August 2019 to the conclusion of the trial on February 6, 2020.[2] When Grobman was convicted, I was initially asked to assist in the sentencing, but thereafter Grobman hired another law firm, and I withdrew from the case on September 25, 2020 [*USA v. Grobman*, DE: 579].

**Legal Memorandum:**

    **A) Sixth Amendment Right to Counsel**

My disqualification in this case would pose a severe hardship on my client.

Manny Recio retained me to represent him in the investigation after his phone was seized in November 2019. I was paid a retainer fee, and I worked on attempting to understand and potentially refute the allegations against Manny Recio. To that end I corresponded with the government, and met with Manny Recio multiple times. I reviewed the extensive text communications between Manny Recio and the potential targets in this case, as well as the work Manny Recio did for the Miami lawyers who were potential targets in this case. I began research into who we believed was the cooperating witness the government was using, and I met with other lawyers, and other individuals who had knowledge of various aspects of the case that I was interested in learning about.

I undertook a review of what we believed to be the potential charges in this case, analyzing Second Circuit and United States Supreme Court decisions. I created work product integral to my preparation for a case, including cross referenced lists of potential witnesses, other cases Manny

---

[2] I referred the government lawyers to the prosecutors in Grobman's trial to confirm that at trial, I had no participation in the trial whatsoever, including that I did not sit at counsel table and sat in the audience taking notes. I do not know if the government lawyers have spoken with the prosecutors.

Recio had worked on, and the integration of text messages between Manny Recio and potential targets in this case and the other cases Manny Recio worked on.

Manny Recio expended significant funds to allow me to prepare to defend him. Having spent his adult career in the DEA, he is not wealthy. At the time I was retained he was married with a young child who he supported and continues to support after his divorce. This indictment has mostly shutdown his ability to obtain work as an investigator. As a former agent, Manny Recio understood the value of having a lawyer prepared for the eventuality of an indictment, and we agreed to use the time while the government was investigating the case to have me learn as much as I possibly could to defend him if he was charged, and Recio paid me for this work.

The government is wrong that to assert that there is no prejudice to Manny Recio. The funds I was paid will have gone towards no use for his defense with another lawyer, and he has a limited ability to hire new counsel based on the investment he has made in my representation of him to this point. Any new lawyer will need to charge to review the work I did, as well as prepare for trial. Mr. Recio will have significant difficulty hiring new counsel he can afford.

**The JEM Invoice Is Not Relevant**

Recio is not charged with defrauding the Greenspoon law firm or his client Grobman. More significantly, ***there is no allegation that the JEM invoice went to the Greenspoon firm,*** or was publicized in any manner, thus no one employed by the firm could testify to its existence.[3] My knowledge or lack thereof of whether another individual assisted Manny Recio in whatever tasks the Greenspoon firm assigned him is completely irrelevant to the charge of whether the money in JEM was used to commit crimes in the indictment.

---

[3] Unless the government has proof otherwise, the defense would stipulate that the JEM invoice was not sent to the Greenspoon firm or Grobman.

5

My potential testimony has less relevance than the Greenspoon lawyers. Although I had no knowledge of the JEM invoice, or JEM, I would also testify that I had no reason to know about JEM since I didn't hire Manny Recio and was not a member of the Greenspoon firm. I was not sent any bills Recio had for Greenspoon to review, as I had no authority to approve payment.

Factually the transfer of money was not hidden or disguised. Recio wrote a check or checks from his Global Legal Consulting company to JEM. There were no third-party nominees or disguised names used in the money transfer. JEM was a publicly created corporation in Florida. The use of the JEM invoice did not conceal or hide or trick anyone as to how JEM was funded. In the light favorable to the government, it shows that Recio made a payment to JEM. Recio had no obligation to tell the Greenspoon lawyers, and certainly not me, what he intended to do with the fees paid to him. My absence of knowledge about JEM is meaningless.

**B) The JEM Invoice**

The date on the JEM invoice is June 3, 2019. The invoice is addressed only to Manny Recio and not Greenspoon. [Exhibit One].

**C) Recio's Bill To Greenspoon**

Recio sent a bill to Greenspoon on or about May 6, 2019. [Exhibit Two]. I believe he was paid soon thereafter, and **before** the JEM invoice of June 3, 2019- this fact makes the government's claim about my lack of knowledge about JEM when Recio was paid irrelevant. I couldn't know about something that didn't exist and I had no authority to approve Recio's payment, so there was no need for him to discuss with me who-if anyone- was assisting him.

### D) The Case Law On Disqualification

In *United States v. Cunningham* 672 F.2d 1064, 1070 (2d Cir. 1982), the court held

> Although a defendant's right to counsel of his choice is not an absolute one, we have consistently recognized that the right of a defendant who retains counsel to be represented by that counsel is a right of constitutional dimension.  Hence, we have observed that the choice of counsel should not be unnecessarily obstructed by the court.

(internal citations omitted). *See also United States v. Bubar*, 567 F.2d 192, 203 (2d Cir. 1977) (recognizing a defendant's "constitutional right to be represented by counsel of his own choice").

Because disqualification motions interfere with a party's right to counsel of his/her own choice they are "viewed with disfavor." *John Wiley & Sons*, at 419-20 (citing *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,* 160 F. Supp. 2d 657, 662–63 (S.D.N.Y. 2001)). "The party seeking disqualification must meet a "heavy burden of proof in order to prevail." *Gormin v. Hubregsen,* 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009).

### E) I am not a "Necessary" Witness

The government has a heavy burden to disqualify a lawyer as a potential witness: "such motions are viewed with disfavor in this Circuit and, while any doubts are to be resolved in favor of disqualification, the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary." *Acker v. Wilger*, 12 CIV. 3620 JMF, 2013 WL 1285435, at *1 (S.D.N.Y. Mar. 29, 2013) (cites omitted).

Additionally "On a motion to disqualify based on the witness-advocate rule, where the moving party intends to call an adversary's attorney, the movant must demonstrate both that the lawyer's testimony is "necessary" and that there exists a "substantial likelihood that the testimony would be prejudicial to the witness-advocate's client."  *Id.*, citing *Finkel v. Frattarelli Bros., Inc.,* 740 F.Supp.2d 368, 373 (E.D.N.Y.2010).

The government's motion fails on the "necessity prong" of disqualification. "When considering the "necessity" prong of the disqualification inquiry, '[a] court should examine factors such as the significance of the matters, weight of the testimony, and availability of other evidence.'" *John Wiley & Sons*, at 421-22 (citing *Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010)).

"For purposes of considering a disqualification motion, the Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but rather whether trial of the case will in fact require his testimony." *John Wiley & Sons*, at 421-22; *See also Purgess v. Sharrock,* 33 F.3d 134, 144 (2d Cir.1994) ("Disqualification may be required only when it is likely that the testimony to be given by [counsel] is necessary"); *Fenn & Fenn, Inc. v. MacQueen,* 1989 WL 58041, at *8 (S.D.N.Y. May 19, 1989) ("[N]o disqualification should occur until it is apparent the attorney's testimony is itself admissible and necessary").

The timing of Manny Recio's bill to Greenspoon (May 2019) and the JEM invoice (June 2019) should end this inquiry and result in the government's motion being denied. No one, myself or the Greenspoon lawyers could have had knowledge of the JEM invoice because it was created after Manny Recio was paid for his work. Additional testimony by me that I knew nothing about whether Manny Recio utilized anyone at JEM to help him do whatever tasks David Kubiliun and the Greenspoon law firm assigned him is cumulative, not necessary, nor relevant to prove whether funds from JEM were used to commit the crimes of conspiracy to bribe a public official, bribery, bribery or honest services fraud. *See United States v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004) (Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable") (quoting Fed. R. Evid. 401).

The government seeks to disqualify me because while David Kubiliun may deny knowledge of JEM, that is not, in their view sufficient. The government avers that they need more testimony- specifically my testimony, although they have not said whether they will call the Greenspoon associate lawyer who was working on the case. Because I would not have known about JEM because I was not supervising Manny Recio or authorizing his payments, my testimony is less significant than what the Greenspoon lawyers could provide. My testimony is not necessary, as the courts define that term in disqualification cases.

Disqualification fails for relevance and lack of necessity. Even assuming this is relevant evidence, which I do not concede, under the balancing test between the government's interest and Manny Recio's rights under the Sixth Amendment, along with the availability of other lawyers who supervised Manny Recio to provide the testimony the government seeks, I respectfully argue that this Court should deny the motion and allow me to continue to represent Manny Recio.

Respectfully Submitted,

/S *Philip L. Reizenstein,* Esq
Philip L. Reizenstein
Reizenstein and Associates
2828 Coral Way suite 540
Miami, FL, 33145
(305) 444-0755
Philreizenstein@protonmail.com

C: US Attorney's Office SDNY

# EXHIBIT ONE: THE JEM INVOICE

NC2812 - 2-part • NC3812 - 3-part — adams — carbonless invoice

**JEM SOLUTIONS INC**

**Invoice**

INVOICE NO. 102
INVOICE DATE 6/3/19
CUSTOMER ORDER NUMBER

SOLD TO: MANNY RECIO

SHIP TO:

| SALESPERSON | SHIPPED VIA | TERMS | F.O.B. |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| QTY ORDERED | QTY SHIPPED | DESCRIPTION | UNIT | AMOUNT |
|---|---|---|---|---|
| 6/3/19 | | SERVICES FOR JOHNNY GROBMAN CASE | | 10,750 — |

adams NC2812/NC3812 — adams — 11-12

# EXHIBIT TWO: RECIO'S GLOBAL LEGAL CONSULTING INVOICE TO GREENSPOON

# Global Legal Consulting
8306 Mills Drive #229, Miami, Florida 33183

**INVOICE  GM 107 - Grobman**

**DATE:** May 6, 2019

## BILL TO
NAME | Greenspoon Marder

## FOR
Johnny Grobman

PHONE

| Details | AMOUNT |
|---|---|
| Flat fee (rest of case - no trial) | $20,000.00 |
| | |
| | |
| | |
| | |

| | |
|---|---|
| SUBTOTAL | $20,000.00 |
| TAX RATE | 0.00% |
| OTHER | $0.00 |
| TOTAL | $20,000.00 |

Make all checks payable to Global Legal Consulting

If you have any questions concerning this invoice please contact me at (305) 796-7463.  You can wire money to US Century Bank, 396 Alhambra Circle, Coral Gables, Florida 33143: Routing Number: 067015397; Account #: 1052005188 - Attn: Global Legal Consulting - Attn: Manuel Recio