UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JOHN COSTANZO JR. and
MANUEL RECIO,

                    Defendants.

Case No. 22 Cr. 281 (JPO)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOHN COSTANZO, JR.
AND MANUEL RECIO'S OMNIBUS MOTIONS *IN LIMINE***


MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, New York 10022
Tel: (212) 466-6400

*Counsel for John Costanzo, Jr.*


GAINOR & DONNER
3250 Mary Street, Suite 405
Miami, Florida
Tel: (305) 537-2000

*Counsel for Manuel Recio*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

PROCEDURAL BACKGROUND.....................................................................1

POINT I      THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING ANY EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANTS' ALLEGED NADDIS-RELATED CONDUCT ......................................................2

Background ...............................................................................................................3

Legal Standard ........................................................................................................7

Analysis....................................................................................................................9

A.     NADDIS information requested by the defense is "within the government's possession, custody, or control".............................................9

B.     NADDIS information requested by the defense is "material to preparing the defense" ..........................................................................10

C.     The Appropriate Remedy is Preclusion ................................................11

POINT II     THE GOVERNMENT'S EXPERT TESTIMONY SHOULD BE LIMITED ......15

A.     Relevant Facts..........................................................................................15
B.     Argument .................................................................................................15

POINT III    THE GOVERNMENT'S FACT WITNESS TESTIMONY SHOULD BE LIMITED..................................................................................17

A.     Relevant Facts..........................................................................................17
B.     Argument .................................................................................................18

POINT IV    THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING EVIDENCE OF IRRELEVANT AND UNCHARGED "PAYMENTS" TO SPECIAL AGENT COSTANZO ......................................................................20

A.     Each of the irrelevant and uncharged alleged payments should be precluded because they are not "intrinsic" to the charged crimes ..........................20

B.     The uncharged "payments" should also be precluded for independent reasons ...............................................................................23

1.    Alleged payment for Special Agent Costanzo's defense attorney in this case ................................................................23

2.    Alleged payment for the renovation of Special Agent Costanzo's condominium ..................................................25

3.    Watch, furniture, and tickets allegedly from Mr. Recio, Attorney-1, and Attorney-2 ..........................................................................................26

POINT V   THE COURT SHOULD EXCLUDE 404(b) EVIDENCE ..................................... 27

Legal Standards .................................................................................................................... 28

 A. The Government's 404(b) Notice Is Inadequate .................................................... 29
 B. The Proffered Evidence Should Be Excluded ...................................................... 30
  1. Category 1 – 2015 Communications ............................................................ 31
  2. Category 2 – SARC Email ............................................................................. 32
  3. Category 3 – February 1, 2019 John Costanzo, Sr. and Special Agent Costanzo submitted a letter to United Wholesale Mortgage .................... 33
  4. Category 4 – Outside Income on 2020 SF86 ............................................. 34
  5. Category 6 – Tax returns failed to reflect payment and benefits .............. 36

CONCLUSION ..................................................................................................................... 37

# TABLE OF AUTHORITIES

## CASES

*Crane v. Kentucky*,
476 U.S. 683 (1986) ................................................................................. 13

*Crawford v. Washington*,
541 U.S. 36 (2004) ................................................................................... 14

*Fung-Schwartz v. Cerner Corp.*,
No. 17 Civ. 233, 2020 WL 8771329 (S.D.N.Y. Nov. 16, 2020)............. 12

*Old Chief v. United States*
519 U.S. 172 (1997) ................................................................................. 29

*SEC v. Credit Bancorp, Ltd.*,
194 F.R.D. 469 (S.D.N.Y.2000)................................................................ 8

*United States v. Alexandre*,
No. 22 CR. 326 (JPC), 2023 WL 416405 (S.D.N.Y. Jan. 26, 2023) ......... 7

*United States v. Alvarez*,
987 F.2d 77 (1st Cir. 1993) ...................................................................... 12

*United States v. Arce*,
49 F.4th 382 (4th Cir. 2022)..................................................................... 14

*United States v. Armstrong*,
517 U.S. 456 (1996) ................................................................................... 7

*United States v. Arroyo*,
600 F. App'x 11 (2d Cir. 2015)................................................................ 29

*United States v. Autuori*,
212 F.3d 105 (2d Cir. 2000)..................................................................... 35

*United States v. Best*,
No. 20 Cr. 28 (VAB), 2022 WL 1605495 (D. Conn. May 20, 2022) ........ 8

*United States v. Buckley*,
586 F. 2d 498 (5th Cir. 1978).................................................................... 8

*United States v. Carboni*,
204 F.3d 39 (2d Cir. 2000)....................................................................... 28

*United States v. Carrasquillo-Plaza*,
873 F. 2d 10 (1st Cir. 1989) ...................................................................... 8

*United States v. Chase*,
No. 2:04-CR-135, 2005 WL 6733654 (D. Vt. Sept. 16, 2005)................ 16

*United States v. Dukagjini*,
326 F. 3d 45 (2d Cir. 2002) ............................................................... 18, 19

*United States v. Duvall*,
    272 F.3d 825 (7th Cir. 2001) .................................................................. 15

*United States v. Fernandez*,
    Case Nos. 19-15044, 19-15165, 2022 WL 3581793 (S.D. Fla. Aug. 8, 2022) ........................ 16

*United States v. Figueroa Vega*,
    2008 WL 11385385 (D.P.R. April 29, 2008) .................................................. 25

*United States v. Garcia*,
    291 F.3d 127 (2d Cir. 2002) .................................................................. 29

*United States v. Garcia*,
    413 F.3d 201 (2d Cir. 2005) .................................................................. 27

*United States v. Giffen*,
    379 F. Supp. 2d 337 (S.D.N.Y. 2004) ................................................... 8, 9, 10

*United States v. Gordon*,
    987 F.2d 902 (2d Cir. 1993) .................................................................. 29

*United States v. Hatfield*,
    685 F. Supp. 2d 320 (E.D.N.Y. 2010) ........................................................ 22

*United States v. Ilori*,
    Case No. 21-CR-746 (MKV), 2022 WL 2452258 (S.D.N.Y. July 5, 2022) ........................... 21

*United States v. Johnson*,
    816 F. App'x 604 (2d Cir. 2020) ............................................................. 34

*United States v. Kaiser*,
    609 F.3d 556 (2d Cir. 2010) .................................................................. 21

*United States v. Libby*,
    429 F. Supp. 2d 1 (D.D.C. 2006) ............................................................... 7

*United States v. Lloyd*,
    992 F. 2d 348 (D.C. Cir. 1993) ............................................................... 8

*United States v. Lumpkin*,
    192 F. 3d 280 (2d Cir. 1999) ................................................................. 18

*United States v. Mahaffy*,
    Case No. 05-cr-613 (ILG), 2007 WL 1213738 (E.D.N.Y. April 24, 2007) ............... 13, 15, 16

*United States v. Manafzadeh*,
    592 F.2d 81 (2d Cir. 1979) ................................................................... 29

*United States v. Marshall*,
    132 F.3d 63 (D.C. Cir. 1998) ................................................................. 8

*United States v. Martoma*,
    Case No. 12-CR-973 (PGG), 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014) ........................ 22, 23

*United States v. Mejia,*
    545 F.3d 179 (2d Cir. 2008) ......................................................................... 18, 19

*United States v. Miller*,
    116 F.3d 641 (2d Cir. 1997) ............................................................................ 8, 11

*United States v. Naegele,*
    468 F. Supp. 2d 175 (D.D.C. 2007) ...................................................................... 12

*United States v. Nektalov,*
    325 F. Supp. 2d 367 (S.D.N.Y. 2004) .................................................................... 28

*United States v. Newton,*
    Case No. S101 CR. 635 (CSH), 2002 WL 230964 (S.D.N.Y. Feb. 14, 2002) ...................... 21

*United States v. O'Connor,*
    580 F.2d 38 (2d Cir. 1978) ................................................................................ 29

*United States v. O'Sullivan,*
    Case No. 20-cr-272 (PKC), 2021 WL 3080330 (E.D.N.Y. July 20, 2021) ...................... 35

*United States v. Ornelas-Ledesma,*
    16 F.3d 714 (7th Cir. 1994) ............................................................................... 13

*United States v. Patel,*
    Case No. 21-CR-220 (VAB), 2023 WL 2643815 (D. Ct. March 27, 2023) ...................... 21

*United States v. Project on Gov't Oversight,*
    543 F. Supp. 2d 55 (D.D.C. 2008)*,*
    *aff'd in part, rev'd in part and remanded,* 616 F.3d 544 (D.C. Cir. 2010) ...................... 16

*United States v. Salyer,*
    271 F.R.D. 148 (E.D. Cal. 2010)
    *opinion adhered to as modified on reconsideration,*
    No. CR. S-10-0061 LKK, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) ...................... 7, 9

*United States v. Santiago,*
    46 F. 3d 885 (9th Cir. 1995) ............................................................................ 7, 9, 10

*United States v. Santos,*
    Case No. 01-cr-537 (DGT), 2010 WL 2985913 (E.D.N.Y. July 27, 2010) ...................... 27

*United States v. Scop,*
    846 F. 2d 135, 139 (2d Cir. 1988)*,*
    *modified on other grounds,* 856 F. 2d 5 (2d Cir. 1998) ...................... 16

*United States v. Scott,*
    677 F.3d 72 (2d Cir. 2012) ................................................................................ 29

*United States v. Stein,*
    488 F. Supp. 2d 350 (S.D.N.Y. 2007) ................................................................... 8, 9

*United States v. Stein*,
   521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007) ............................................................. 21

*United States v. Stevens,*
   985 F. 2d 1175 (2d Cir. 1993) ................................................................................. 8

*United States v. Trevino*,
   556 F.2d 1265 (5th Cir. 1977) ............................................................................. 9, 10

*United States v. Valle*,
   No. 12 CR. 847 PGG, 2013 WL 440687 (S.D.N.Y. Feb. 2, 2013) .................... 15, 16

*United States v. Varoudakis*,
   233 F.3d 113 (1st Cir. 2000) ..................................................................................... 37

*United States v. Young*,
   745 F.2d 733 (2d Cir. 1984) .............................................................................. 18, 19

*Washington v. Texas*,
   388 U.S. 14 (1967) ................................................................................................. 13

## STATUTES

18 U.S.C. § 201(b) ......................................................................................................... 3

## OTHER AUTHORITIES

7 Moore's Federal Practice § 34.14 ............................................................................... 8

Mason Ladd, *Expert Testimony,*
   5 Vand. L. Rev. 414, 418 (1952) ........................................................................... 18

Milton Hirsch, *"This New-Born Babe an Infant Hercules": The Doctrine of "Inextricably Intertwined" Evidence in Florida's Drug Wars,*
   25 Nova L. Rev. 279, 296 (2000) ........................................................................... 28

## RULES

Fed. R. Crim. P. 16 ............................................................................................. *passim*

Fed. R. Evid. 404(b) ..................................................................................................... 30

Fed. R. Evid. 405 .......................................................................................................... 30

Fed. R. Evid. 602 .......................................................................................................... 27

Fed. R. Evid. 702 .......................................................................................................... 18

## PRELIMINARY STATEMENT

Defendants John Costanzo, Jr. and Manuel Recio, by and through undersigned counsel, respectfully submit this Memorandum of Law in support of their motions *in limine* to: (1) preclude the government from offering any evidence or argument concerning the defendants' alleged NADDIS-related conduct; (2) limit the government's expert testimony; (3) limit fact witnesses from testifying as experts; (4) preclude the government from offering evidence of irrelevant and uncharged "payments" to Special Agent Costanzo; and (5) exclude 404(b) evidence.

## PROCEDURAL BACKGROUND

On or about May 18, 2022, a grand jury in the Southern District of New York returned a five-count Indictment charging Special Agent Costanzo and Mr. Recio with participating in a bribery scheme between October 2018 to November 2019. ECF 1 at ¶ 7. Count One charges Special Agent Costanzo and Mr. Recio with conspiracy to bribe a public official, in violation of Title 18 U.S.C. § 371. Count Two charges Special Agent Costanzo with accepting a bribe as a public official, in violation of Title 18 U.S.C. §§ 201(b)(2)(C) and 2. Count Three charges Mr. Recio with bribery of a public official, in violation of Title 18 U.S.C. §§ 201(b)(1)(C) and 2. Count Four charges Special Agent Costanzo and Mr. Recio with conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349. Count Five charges Special Agent Costanzo and Mr. Recio with honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346 and 2.

The Indictment, in substance, broadly alleges that Special Agent Costanzo and Mr. Recio, together with others, engaged in a bribery scheme in which Mr. Recio and others provided Special Agent Costanzo with "various benefits" in exchange for Special Agent Costanzo using his position as a DEA agent to provide "nonpublic DEA information, including information about forthcoming, sealed indictments and nonpublic investigations" to Mr. Recio. At the time of the alleged scheme,

Mr. Recio worked as a private investigator and sought the information to recruit new clients for defense attorneys on an "as-needed basis." ECF 1 at ¶ 7. The Indictment alleges three categories of actions allegedly taken by Special Agent Costanzo to assist Mr. Recio in his work as a private investigator for criminal defense attorneys. The first concerns the disclosure of "nonpublic information about sealed Indictments and ongoing DEA investigations so that RECIO could use this information to recruit indicted defendants and DEA targets as clients for defense attorneys." *Id.* at ¶ 21(a). The second involves Special Agent Costanzo conducting searches in DEA's NADDIS database to obtain information for Mr. Recio and others. *Id.* at ¶ 21(d). The third category involves Special Agent Costanzo providing Mr. Recio with assistance in his work with defense attorneys. *Id.* at ¶ 21(e).

The Indictment asserts that Special Agent Costanzo, in exchange for the information, benefitted from four payments: (1) one $2,500 payment from a bank account in the name of Global Legal Consulting, a company associated with Mr. Recio, to a company co-owned by a family member of Special Agent Costanzo; (2) one $50,000 payment from another law enforcement officer, "TFO-1," to the same Costanzo family member; and (3) two payments, $10,000 and $10,750, from the Global Legal Consulting account to a bank account associated with a company incorporated by TFO-1. *Id.* at ¶¶ 16-19.

## POINT I

### THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING ANY EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANTS' ALLEGED NADDIS-RELATED CONDUCT

The Court should preclude the government from presenting any evidence or argument regarding NADDIS-related conduct. Certain NADDIS information is: (i) "within the government's possession, custody, or control," and (ii) "material to preparing the defense." And it has never been made available to the defense. The defendants object on Rule 16, Due Process and

Sixth Amendment grounds to any testimony regarding the "information returned by NADDIS searches" because the government has yet to make these materials available for discovery and inspection.

**Background**

      The government has been investigating this case for more than four years. The Indictment, returned more than sixteen months ago, charges that Special Agent Costanzo and Mr. Recio engaged in a criminal bribery conspiracy centered around the following core allegation: after Mr. Recio retired from DEA, he repeatedly asked Special Agent Costanzo to search the names of individuals in DEA's NADDIS database, and Special Agent Costanzo *then disclosed certain nonpublic information returned by those NADDIS searches to Mr. Recio*. ECF 1 at ¶ 21(d) (emphasis added). The government alleges that this was not only a violation of the DEA standards of conduct and DEA policy, *id.* at ¶¶ 11 and 13, but also a criminal bribery scheme because Special Agent Costanzo was allegedly induced to commit those policy violations in exchange for bribe payments from Mr. Recio, *id.* at ¶¶ 29-43. *See* Title 18 U.S.C. § 201(b)(2)(c) (requiring proof of public official accepting a thing of value in return for "being induced to do or omit to do any act in violation of the official duty of such official or person").

      Following the May 2022 Indictment, the government produced various categories of Rule 16 discovery to the defendants, including recordings from a T-III wiretap, electronic communications between the defendants and other individuals, financial records, and other documents. The Rule 16 discovery also included "audit logs" that the government obtained from the DEA's NADDIS database. Those logs contain no information regarding the substantive results of any searches allegedly run by Special Agent Costanzo; they contain only user access and the

search history. The government has provided no other NADDIS-related discovery to the defendants – no screenshots, printouts, reports, etc.

On September 12, 2023, the government's expert disclosure notified the defendants that it intends to call ██████████ to provide the following expert testimony regarding NADDIS:



Young Decl. Exh. A, at 2 (██████████████████████). Statements made by ██████████ to the government confirms that the government intends to elicit expert testimony regarding ██████████████████████████ ██████████████████████████████ ██████████████████ Young Decl. Exh. B, ██████████████████ ██████████████████.

██████████ correspondence with the government makes clear that ██████████ ██████████████████████████████ ██████████████.

Young Decl. Exh. C, █████████████████████████████████. The government's requests to ████████████████████████████ TFO-1, whom the government alleges is a related party. Young Decl. Exh. D, ████████████ ██████████████████████████. ██████████ informed the government that ██████████████████████████████. *Id.* The government has also requested ████████████████████████████████████ ████████████████████████████████████ Young Decl. Exh. E, ████████████████████████████ ██████████.

Other reports reveal ██████████████████████████ ████████████████████████████████████ █████████████ Young Decl. Exh. F ██████████.

Undoubtedly, NADDIS information is central to the government's charges. *But the government has failed to produce a shred of actual NADDIS information to the defense.* Now, less than a month before trial, the government has provided no discovery regarding the substantive results of *any* NADDIS searches allegedly run by Special Agent Costanzo.

For months, the defendants have tried unsuccessfully to address the government's discovery failure. On August 4, 2023, counsel for Special Agent Costanzo submitted a request to the Assistant United States Attorneys prosecuting this case to permit the defendants to inspect the NADDIS pages and screens that were allegedly accessed by Special Agent Costanzo, according to the audit logs produced by the government. Young Decl. Exh. G. Nearly two weeks later, on August 17, 2023, the prosecutor responded that "[p]ulling the information that Costanzo accessed in 2019 presented some difficulties. The DEA is working on a solution[.]" *Id.* The government

also requested that the defendants "identify the specific names you would like to inspect[.]" *Id.* Defense counsel responded by requesting that the government begin by making available the NADDIS searches that it intended to introduce at trial, and then providing the rest of the searches as soon as possible. *Id.*

On September 13, 2023, the government provided a preliminary list of NADDIS searches that it expects to discuss at trial. The government stated that it would "send an email, copying a DEA representative, to arrange an inspection of those NADDIS searches." *Id.* Two days later, however, and more than a month after defense counsel initially requested to inspect the NADDIS search results, counsel for the government informed the defendants for the first time that DEA required a request for inspection of the NADDIS database pursuant to *Touhy v. Ragen*, 340 U.S. 462 (1951). *Id.* Although the defendants dispute the applicability of *Touhy* and related regulations, counsel for Special Agent Costanzo dutifully submitted that *Touhy* request two days later, on September 18, 2023. Young Decl. Exh. H. As of submission, the government represented that "DEA will get in touch…by next week at the latest." *Id.*

Despite these government communications with defense counsel, ███████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████ Young Decl. Exh. I. ██████████████████ ██████████████████████████████████. However, ███████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *Id.*

Nevertheless, the government has neither produced in discovery nor made available for inspection any files concerning the details of the actual NADDIS search results that form the heart of the bribery allegations in this case.

**Legal Standard**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the government to produce or make available for inspection any documents or data "within the government's possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16; *see United States v. Armstrong*, 517 U.S. 456, 463 (1996). As to the first prong, "possession, custody, or control" extends beyond the particular United States Attorney's Office's own investigation files. *See, e.g., United States v. Libby*, 429 F. Supp. 2d 1, 6 (D.D.C. 2006) ("[D]ocuments maintained by other components of the government which are 'closely aligned with the prosecution' must be produced.") (citations omitted). It is well established that the government must produce discoverable documents in the possession of other agencies. *See United States v. Alexandre*, No. 22 CR. 326 (JPC), 2023 WL 416405, at *5-6 (S.D.N.Y. Jan. 26, 2023); *United States v. Santiago*, 46 F. 3d 885, 894 (9th Cir. 1995) (finding that the United States Attorney's Office was required to produce discoverable documents in possession of the Department of Justice's Bureau of Prisons); *see also United States v. Salyer,* 271 F.R.D. 148, 156 (E.D. Cal. 2010) (adopting the parties' position in a criminal antitrust prosecution that "documents within the possession of the United States Attorney's Office, the Anti–Trust Division of the Department of Justice, the FBI, IRS–CI (criminal), the USDA and FDA" are within the possession, custody and control of the "government" for purposes of discovery).

In analyzing whether documents are in the "possession, custody, or control," of the United States Attorney's Office, a court in this district stated:

> Legal ownership of the requested documents or things is not determinative, nor is actual possession necessary if the party has control of the items. *Control* has been defined to include "the legal right to obtain the documents requested upon demand." The term "control" is broadly construed.

*United States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007) (citing 7 MOORE'S FEDERAL PRACTICE § 34.14); *see also id.* at 361 n. 45 (citing *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y.2000)) ("control is 'the legal right, authority, or *practical ability* to obtain the materials sought upon demand'") (emphasis added). "[T]he government is 'not allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing [its] access to it in preparing [its] case for trial.'" *United States v. Best*, No. 20 Cr. 28 (VAB), 2022 WL 1605495, at *17 (D. Conn. May 20, 2022) (quoting *United States v. Giffen*, 379 F. Supp. 2d 337, 343 (S.D.N.Y. 2004)).

As to the second prong of Rule 16, an item need not be exculpatory or favorable to the defendant to be considered "material to preparing the defense." That is, Rule 16 does not limit production to exculpatory or favorable material, as *Brady* does. *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998). Thus, a court may compel the production of evidence even if the evidence is not directly exculpatory. *See Stein*, 488 F. Supp. 2d at 356-57 (S.D.N.Y. 2007) (citing *United States v. Lloyd*, 992 F. 2d 348, 351 (D.C. Cir. 1993) and *United States v. Stevens,* 985 F. 2d 1175, 1180 (2d Cir. 1993)). The materiality requirement "is not a heavy burden." *See id.* The defendant need only demonstrate a "prima facie showing of materiality." *United States v. Carrasquillo-Plaza*, 873 F. 2d 10, 12 (1st Cir. 1989) (quoting *United States v. Buckley*, 586 F. 2d 498, 506 (5th Cir. 1978)).

Finally, the Second Circuit has held that, "[w]hen the government has failed to comply with Rule 16, the district court has broad discretion to determine what remedial action, if any, is appropriate." *United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997).

**Analysis**

### A.    NADDIS information requested by the defense is "within the government's possession, custody, or control"

The first prong of the Rule 16 analysis requires the Court to determine whether the information withheld in discovery is "within the government's possession, custody, or control." Rule 16(a)(1)(E). This test is not confined to the walls of the particular United States Attorney's Office prosecuting the case. *United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004) ("The Government's argument that Rule 16 only requires production of documents within the prosecutor's possession or direct control is not persuasive. Rule 16 is an 'anti-withholding provision[ ].'") (quoting *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir. 1977)); *see also Stein*, at 488 F. Supp. 2d at 363 ("The rule speaks of 'possession, custody or control,' not simply 'possession.'"). Instead, it is well-established that under Rule 16, the government is required to produce discoverable information in the possession, custody, or control of agencies within the Department of Justice. *See e.g.*, *Santiago*, 46 F.3d at 894 (requiring the government to produce discoverable documents in possession of the Department of Justice's Bureau of Prisons); *Salyer*, 271 F.R.D. at 157, *opinion adhered to as modified on reconsideration*, No. CR. S-10-0061 LKK, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) (adopting the parties' position that Rule 16 discovery applied to Anti-Trust Division, FBI, IRS, USDA, and FDA).

In *Giffen*, a defendant charged with FCPA, fraud, and money laundering offenses sought the disclosure of materials related to a potential public authority defense in the possession of the CIA and the Department of State. 379 F. Supp. 2d at 341-43. The government opposed, arguing that Rule 16 "only requires production of documents within the access and control of the prosecution—not the entirety of the Executive Branch." *Id.* at 341. Judge Pauley found the argument unpersuasive, ruling that a "prosecutor is not 'allowed to avoid disclosure of evidence

by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial.'" *Id.* at 342 (quoting *Trevino*, 556 F.2d at 1272). He further ruled that documents "that the Government has reviewed or has access to must be provided to aid a defendant in preparing his defense." *Id.* at 343 (citing *Santiago*, 46 F.3d at 894).

While a prosecutor is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery request, that is not the ask here. To the contrary, the defendants have requested to inspect documents and information contained within the NADDIS database that the government is not only aware of, but for which it appears to have arranged a "work around" to access through its DEA expert. The government is apparently able to direct



Young Decl. Exh. C, ; Young Decl. Exh. E, .

The government cannot simply avoid relevant evidence that it is fully aware of and that it "[c]ould conceivably pull" (Young Decl. Ex. I, ). "Rule 16 is an 'anti-withholding provision[ ].'" *Giffen*, 379 F. Supp. 2d at 342.

## B. NADDIS information requested by the defense is "material to preparing the defense"

The second prong of the Rule 16 analysis is met here. The NADDIS information is material. The defendants are charged with bribery and conspiracy on the theory that Special Agent

Costanzo disclosed non-public NADDIS search results to Mr. Recio in exchange for bribes. ECF 1, at ¶¶ 21(d), 29-43. The Indictment further alleges that Mr. Recio asked Special Agent Costanzo to search the name of an individual and a company with which that individual was associated. ECF No. 1 at ¶ 18. The Indictment then alleges that "[o]n November 15, 2018 at approximately 10:36 a.m., COSTANZO queried those names in NADDIS. Approximately, four minutes later, COSTANZO called RECIO." *Id*.

It is beyond cavil that this information is material. The non-public results of the alleged NADDIS searches are the "quo" in the government's alleged *quid pro quo* bribery scheme. The defense of course considers it relevant to assess whether the information the government labels as non-public NADDIS information, *is* information that existed in NADDIS. Failing to disclose such information to the defense is the equivalent of the government indicting a sitting United States Senator for allegedly accepting bribes in exchange for assisting a foreign country, and then not disclosing in discovery what assistance he allegedly provided. The defendants are entitled to this evidence – *need* this evidence - that is within the control of the government and material to their defense. Fed. R. Crim. Proc. 16(a)(1)(E).

### C. The Appropriate Remedy is Preclusion

For three independent reasons, the Court should preclude the government from introducing any evidence or argument relating to NADDIS information.

*First*, district courts have broad discretion to determine what remedial action is appropriate for the government's Rule 16 violation. *Miller*, 116 F.3d at 681. Preclusion is an appropriate remedy where the government's discovery failures go to the heart of the charged conduct—as they do here:

> Given the central importance of the alleged statement, the government's failure to disclose it as required by Rule 16 had additional grave consequences for [the defendant]. First, [the defendant] was deprived of any meaningful opportunity to

> investigate the circumstances of her alleged statement and to attempt to suppress it
> . . . Second, not knowing of the alleged statement, [the defendant] was deprived of
> the opportunity to design an intelligent litigation or plea strategy that responded to
> the alleged statement.

*United States v. Alvarez*, 987 F.2d 77, 85-86 (1st Cir. 1993) (reversing conviction and finding that "[t]he government is wholly responsible for unfairly surprising the defendant and should not benefit from its own violation of Rule 16.").

To allow the government to introduce NADDIS-related evidence while denying the defense the opportunity to examine that evidence, would permit the government to effectively circumvent Rule 16. To the extent that the NADDIS database information exists, it has not been produced as Rule 16 discovery. To the extent it no longer exists (as stated by the government's expert), the government effectively let the evidence be altered. The government ran the NADDIS audit report in 2019, before the Indictment, but did not preserve the underlying search results listed in the audit report. The government was aware of the universe of NADDIS information potentially accessed and disclosed, but took no steps to preserve that information at any point in the last four years. The government's actions have prejudiced Special Agent Costanzo and Mr. Recio's trial preparation such that no less restrictive alternative is available.

*Second*, expert disclosures under Rule 16 require the government to make available to the defense "all of the underlying documents" on which its expert has relied. *Cf. United States v. Naegele*, 468 F. Supp. 2d 175, 177 (D.D.C. 2007) (finding that "the defendant has failed to provide the 'bases and reasons' for the opinions of his experts as required by Rule 16(b)(1)(C)" and ordering production of such materials to the government). As to ███████, the defendants are left completely in the dark as to the "basis and reasons for the proffered opinions" regarding NADDIS. *Fung-Schwartz v. Cerner Corp.*, No. 17 Civ. 233, 2020 WL 8771329, at *2 (S.D.N.Y. Nov. 16, 2020). The government refers to ████████ "training and professional experience

with DEA," but noticed expert testimony regarding the visual orientation of NADDIS, search capabilities, and information within NADDIS – yet the defense remains completely blind as to such information. The defense has received no printouts of NADDIS, screenshots of NADDIS, or copies of NADDIS reports undergirding █████████████ proffered opinions. Not one DEA report referencing the specific individuals that the government will discuss at trial, nothing about the "Remarks" or "summary" referenced in the proffered testimony was produced. That is enough to preclude such testimony. *United States v. Mahaffy*, Case No. 05-cr-613 (ILG), 2007 WL 1213738, *3 (E.D.N.Y. April 24, 2007) ("It is well-settled that a court may in its discretion preclude expert examination pursuant to Rule 16(d)(2)(C) of the Federal Rules of Criminal Procedure regarding any topics or opinions not properly disclosed.").

*Third*, any introduction of documentary evidence, fact witness, or expert testimony from a law enforcement database that the defense team has had no access to in discovery will also violate the defendants' Confrontation Clause rights under the Sixth Amendment. Special Agent Costanzo and Mr. Recio cannot fully and effectively confront that which they cannot review. The Sixth Amendment guarantees the right "to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (Under the due process, the compulsory process, or the confrontation clauses, a defendant possesses the "basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful testing.'").

It is no answer to say that the reliability of a DEA database is sufficient to overcome any Sixth Amendment concerns, especially where the Seventh Circuit has already found that the *unreliability* of data housed within NADDIS renders such information an insufficient basis for probable cause. *United States v. Ornelas-Ledesma*, 16 F.3d 714, 717-18 (7th Cir. 1994) (equating

NADDIS information to an "uncorroborated tip" from an "informant not known to be reliable"). The Supreme Court has already made clear that reliability plays no part in the Confrontation Clause analysis. *Crawford v. Washington*, 541 U.S. 36, 62 (2004) ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.").

Instead, the test for whether the admission of evidence violates the Confrontation Clause is whether it is testimonial in nature. On that score, a database housing the reports and judgments of law enforcement officers "made for the purpose—or at least the foreseeable result—of identifying and prosecuting criminal cases" is undoubtedly testimonial. *United States v. Arce*, 49 F.4th 382, 393 (4th Cir. 2022). In *Arce*, the court determined that images categorized by law enforcement officers in the government's "Griffeye" database were "classic testimonial evidence" because the conclusion "depends on the judgment of law enforcement[.]" *Id.* The information contained within NADDIS is no different, and it is no answer for the government to simply withhold all such testimonial evidence from the defense and instead call an expert witness to opine on it. In fact, that is the very Confrontation Clause violation found by the Fourth Circuit in *Arce*. *Id.* (the inclusion of testimonial statements from Griffeye database in Cellebrite reports introduced by law enforcement witness "violated Arce's Confrontation Clause rights").

For the reasons set forth above the Court should preclude the government from offering any evidence or argument concerning the defendants' alleged NADDIS-related conduct.

## THE GOVERNMENT'S EXPERT TESTIMONY SHOULD BE LIMITED

**A.      Relevant Facts**

The government has given notice that it intends to call experts to testify at trial, including

████████████, a DEA Inspector who will testify concerning DEA policies on outside employment; DEA's NADDIS database; and DEA's Sensitive Activity Review Committee. *See* Exh. A. The government should be precluded from eliciting testimony that calls for legal conclusions.

**B.      Argument**

Federal Rule of Criminal Procedure 16(a)(1)(G) requires that "[t]he government must disclose to the defendant, in writing, the information required by (iii) for any [expert] testimony that the government intends to use at trial." To satisfy the Rule, the disclosure must contain a complete statement of all opinions that the government will elicit from the witness during its case-in-chief . . . the bases and reasons for them . . . [and] the witness's qualifications." *Id.* "Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions." *United States v. Valle*, No. 12 CR. 847 PGG, 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013) (citing *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of the expected testimony, not a list of topics.")); *Mahaffy*, 2007 WL 1213738, at *3 (same). As the Advisory Committee notes to the Rule explain, the disclosure requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *Id.* Finding a failure to provide disclosures in accordance with the Rule, the district court may exclude

the expert's testimony at trial. *See Valle*, 2013 WL 440687, at \*5; *Mahaffy*, 2007 WL 1213738, at \*2.

The government disclosed that ██████████ will testify "about the DEA's policies regarding outside employment. In particular, ██████████ will testify that outside employment is rarely approved for DEA special agents…" Young Decl. Exh. A. ██████████ should be precluded from testifying as to what responsibilities constituted Special Agent Costanzo's "official duties" and whether any conduct "violated DEA policies." *See United States v. Fernandez*, Case Nos. 19-15044, 19-15165, 2022 WL 3581793, at \*5 (S.D. Fla. Aug. 8, 2022) ("The question of what responsibilities constituted Fernandez's 'official duties' was a factual one for the jury."). "It is for the jury to decide what [a government employee's] official responsibilities were, what he did, and hence whether his conduct constituted government services." *United States v. Project on Gov't Oversight,* 543 F. Supp. 2d 55, 61 (D.D.C. 2008)*, aff'd in part, rev'd in part and remanded,* 616 F.3d 544 (D.C. Cir. 2010).

Similarly, ██████████ should be precluded from making any references concerning "bribery scheme," "violations of duty," or any similar characterizations that call for legal conclusions. *See United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988), *modified on other grounds,* 856 F. 2d 5 (2d Cir. 1998) ("…Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions."). Certain characterizations, particularly using the terms "scheme," "bribery," or "duty," are legal conclusions that encroach on the court's province to explain terms of legal significance to the jury. *See id.* at 140. Testimony that provides an overall conclusion of criminal conduct, is improper at trial. *See United States v. Chase*, No. 2:04-CR-135, 2005 WL 6733654, at \*22-23 (D. Vt. Sept. 16, 2005) ("judgements about the definition of fraud could 'trespass on the role of the Court.'").

In short, no witness (expert or fact) should testify about legal conclusions.

## POINT III

## THE GOVERNMENT'S FACT WITNESS TESTIMONY SHOULD BE LIMITED

### A.     Relevant Facts

Based on the government's witness list, it is anticipated that during the testimony of one or more law enforcement agents, the government will seek to admit emails, text messages, and recordings of calls and meetings between and among the alleged co-conspirators. It is further expected that the government may ask the testifying agent(s) to explain, interpret or decipher certain words, phrases, names and/or portions of conversations, or discuss certain modes of communication using questions similar to the following:

- "What do you understand the defendant (or co-conspirator) to be discussing or referring to here?"

- "In the context of this conversation, what do you understand ___ to mean?"

- "Can you explain to the jury why someone would ….?"

- "Based on your training and experience, what does ___ mean?"

- "Based on your involvement in this investigation, what do you understand ___ to mean?"

- "What type of information is this?"

- "Is this conduct a violation of DEA policy?"

Indeed, such interpretation and characterization of the defendants' communications was a common refrain 

██████████████████████████████████████████████
███████████████ .

Young Decl. Exh. J, at 23, 25 ███████████ .

## B. Argument

These types of questions should be precluded because, at bottom, they seek expert opinion which must be disclosed pursuant to Rule 16 of the Federal Rules of Criminal Procedure. *United States v. Mejia*, 545 F.3d 179, 188-89 (2d Cir. 2008) (applying Federal Rule of Evidence 702 to "skilled witness" testimony from a law enforcement officer). The government has not noticed any expert through whom it might try to ask these interpretive questions and indeed one is not necessary. In the absence of Rule 16 notice, the Court should reject any attempt by the government to elicit expert testimony from any law enforcement witnesses testifying at trial. This is not a case that will require explication of narcotics jargon, organized crime lingo, or coded language; the "untrained layman" will be able intelligently to determine "the particular issue" in the absence of guidance from an expert. *Id.* at 189 (citing Federal Rule of Evidence 702 Advisory Committee's note (quoting Mason Ladd, *Expert Testimony,* 5 Vand. L. Rev. 414, 418 (1952)) (internal quotation marks omitted).

Moreover, even if the government were to try to provide belated expert disclosure under Rule 16, the Court should still preclude any case agents or investigative agents from offering this kind of opinion testimony. "[W]hen a fact witness or a case agent also functions as an expert for the government, the government confers upon him '[t]he aura of special reliability and trustworthiness surrounding expert testimony, which ought to caution its use." *United States v. Dukagjini*, 326 F. 3d 45, 53 (2d Cir. 2002) (citing *United States v. Young*, 745 F.2d 733, 766 (2d Cir. 1984)); *see also United States v. Lumpkin*, 192 F. 3d 280, 289 (2d Cir. 1999) (upholding the

preclusion of an expert because "the added aura of reliability that necessarily surrounds expert testimony would have placed the officers' credibility here in jeopardy").

The role of government agents as individuals with specialized knowledge and aggregate knowledge from the investigation "increases the likelihood that inadmissible and prejudicial testimony will be proffered[,]" including a case agent who "goes beyond interpreting code words and summarizes his beliefs about the defendant's conduct based upon his knowledge of the case." *Dukagjini*, 326 F.3d at 53. This "creates a risk of prejudice 'because the jury may infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial.'" *Id.* (citing *Young*, 745 F.2d at 766). It also transforms the officer expert "into the hub of the case, displacing the jury by connecting and combining all other testimony and physical evidence into a coherent, discernible, internally consistent picture of the defendant's guilt." *Mejia*, 545 F.3d at 190-91.

This Court should not permit the government to run afoul of the Second Circuit's admonition in *Dukagjini*: when case agents testify as experts, they gain "unmerited credibility when testifying about factual matters from first-hand knowledge." *Dukagjini,* 326 F.3d at 53. The entire process transforms the case into "the grand jury practice, improper at trial, of a single agent simply summarizing an investigation by others that is not part of the record." *Id.* at 54; *see also Mejia*, 545 F3d at 190 ("An increasingly thinning line separates the legitimate use of an officer expert to translate esoteric terminology or to explicate an organization's hierarchical structure from the illegitimate and impermissible substitution of expert opinion for factual evidence").

The line in this case should be straightforward: the government's law enforcement witnesses can introduce admissible phone calls, recordings, text messages, and other

communications—but they cannot characterize, interpret, translate, or opine on them in any manner. The Court should limit the government's fact witness testimony accordingly.

## POINT IV

### THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING EVIDENCE OF IRRELEVANT AND UNCHARGED "PAYMENTS" TO SPECIAL AGENT COSTANZO

The Indictment details four discrete alleged bribe payments charged by the grand jury. ECF 1, at ¶¶ 15-20. The government also represented to the Court that its case-in-chief will be limited to those four alleged payments. Young Decl. Exh. K, July 15, 2022 Hearing Transcript, at 8-9 (describing four payments charged in the Indictment in response to question from the Court as to whether "these are the only two invoices in the case"). Now, less than a month before trial, the government's production of witness statements and its witness list reveals a strategy to bolster the indicted case with an assortment of additional irrelevant uncharged payments. The government should be precluded from doing so.

#### A. Each of the irrelevant and uncharged alleged payments should be precluded because they are not "intrinsic" to the charged crimes

The government's 404(b) notice outlines six categories of evidence that supposedly "demonstrate the defendants' knowledge, intent, motive, opportunity, identity, and lack of mistake or accident with respect to the charges in the Indictment[.]" Young Decl. Exh. L. None of the following uncharged alleged payments were included in the 404(b) notice: (1) an alleged payment from TFO-1 to Special Agent Costanzo's former girlfriend for his retention of a defense lawyer in this case; (2) an alleged payment from Attorney-1 for renovations on Special Agent Costanzo's home; (3) a watch allegedly given to Special Agent Costanzo by Attorney-1; (4) furniture allegedly "gifted" to Special Agent Costanzo by Attorney-2; and (5) a Yankees game and dinner in New York City allegedly attended by Attorney-1, Special Agent Costanzo, and two other DEA agents.

Absent 404(b) notice, evidence of these five additional "payments" can only be admitted if the government demonstrates that they are "intrinsic" to the charged crimes. *United States v. Ilori*, Case No. 21-CR-746 (MKV), 2022 WL 2452258, at *4 (S.D.N.Y. July 5, 2022) ("The only practical benefit of admitting evidence as intrinsic, as opposed to under Rule 404(b), is that the Government escapes Rule 404(b)'s notice requirement and the Court need not give a limiting instruction cautioning the jury against making an improper inference of criminal propensity.").

Evidence of uncharged conduct is "intrinsic" if the conduct "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Id*. at *3 (quoting *United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010)). To be admissible, any such "intrinsic" evidence must also survive scrutiny under the Rule 403 balancing test. *Ilori,* 2022 WL 2452258, at *4.

In deciding whether uncharged conduct is "inextricably intertwined" with charged conduct, district courts in the Second Circuit "consider whether the 'details of the uncharged transaction are *necessary* to understand the charged transaction.'" *United States v. Patel*, Case No. 21-CR-220 (VAB), 2023 WL 2643815, at *20 (D. Ct. March 27, 2023) (quoting *United States v. Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007) (emphasis added)). Uncharged conduct is not inextricably intertwined "where '[t]he charged crimes are straightforward and may be fully understood without reference to [the uncharged conduct].'" *Id.* (quoting *United States v. Newton*, Case No. S101 CR. 635 (CSH), 2002 WL 230964, at *2 (S.D.N.Y. Feb. 14, 2002)).

A clear example of a court in this district appropriately cabining intrinsic evidence along these lines is Judge Gardephe's decision in *United States v. Martoma*, Case No. 12-CR-973 (PGG). In *Martoma*, the defendant was charged with trading on material non-public information that he

allegedly received from two doctors concerning the clinical trial of a potential Alzheimer's drug called bapineuzumab. Case No. 12-CR-973 (PGG), 2014 WL 31191, at *1 (S.D.N.Y. Jan. 6, 2014). The government sought to introduce evidence that the two doctors provided the defendant with confidential information regarding other drugs on the theory that it demonstrated "the doctors' willingness to share confidential information regarding clinical trials with Martoma and Martoma's desire for such information." *Id.* at *2. The government argued that the evidence was admissible "because the conduct at issue is inextricably intertwined with the alleged conspiracy, and is relevant to the background of the conspiracy and the nature of the relationship between the Defendant and the doctors, Martoma's alleged co-conspirators." *Id.*

Judge Gardephe disagreed, and refused to admit the evidence as intrinsic proof of the charged offenses, explaining that it was "not necessary for the jury to know that the doctors provided the Defendant with confidential information about other drugs in order for the jury to understand the Government's theory that the Defendant obtained material, nonpublic information from the doctors about bapineuzumab, which the Defendant then traded on." *Id.* at *3. Judge Gardephe further pointed to the indictment as proof that evidence concerning other drugs was not intrinsic, commenting that the Indictment "refutes the Government's 'inextricably intertwined' claims, as it tells a compelling, complete, and detailed story with almost no mention of the confidential information concerning the other drug trials." *Id.* (quoting *United States v. Hatfield*, 685 F. Supp. 2d 320, 323 (E.D.N.Y. 2010)).

The same rationale applies here. While the government will argue that the supposed additional payments are inextricably intertwined and necessary to complete the story of the charged offenses, *Martoma* unmasks the fallacy of such an argument. The government simply cannot show that it is "necessary" for the jury to know that an attorney was rumored to have bought

a watch for Special Agent Costanzo (he did not), *see* I.B.3, *infra*, or that Special Agent Costanzo and two other DEA agents allegedly attended a Yankees game with that attorney, *see* I.B.5, *infra*. The jury is fully capable of understanding the charges in this case without such evidence. And just as Judge Gardephe found in *Martoma*, the Indictment itself shows that the additional "payments" described below are not necessary for the government to tell the story of the charged offenses to the jury.

Without the requisite 404(b) notice or ability to demonstrate the intrinsic nature of the additional payment evidence, the Court should preclude evidence of the uncharged "payments."

**B.      The uncharged "payments" should also be precluded for independent reasons**

Each of the additional "payments": (1) an alleged payment from TFO-1 to Special Agent Costanzo's former girlfriend for his retention of a defense lawyer in this case; (2) an alleged payment from Attorney-1 for renovations on Special Agent Costanzo's home; (3) a watch allegedly given to Special Agent Costanzo by Attorney-1; (4) furniture allegedly "gifted" to Special Agent Costanzo by Attorney-2; and (5) a Yankees game and dinner in New York City allegedly attended by Attorney-1, Special Agent Costanzo, and two other DEA agents is inadmissible for independent reasons as well.

**1.      Alleged payment for Special Agent Costanzo's defense attorney in this case**

Evidence of alleged payments for Special Agent Costanzo's defense attorneys in this case should be precluded.  By way of background, the government produced material and noticed Special Agent Costanzo's former girlfriend as a witness indicating that the government may elicit testimony from the former girlfriend regarding her payment of $20,000 to Special Agent Costanzo's prior counsel in this case. ████████████████████████████

████████████████████████████████████████████████████

█████████████████████ Young Decl. Exh. M, ██████, at 2. The government likely intends to elicit testimony that Special Agent Costanzo paid her back with a check from TFO-1, a law enforcement officer, and a close friend of Special Agent Costanzo's. *Id.*

The government did not notice this payment as 404(b) evidence. The only apparent relevance to the charged crimes is that TFO-1 paid back Special Agent Costanzo's former girlfriend instead of Special Agent Costanzo. Whatever probative value the government may try to attach to this evidence, its relevance to the charged crimes is negligible, at best. First, there is no allegation or evidence that Mr. Recio, or anyone else, had anything to do with this payment or even any knowledge of it. Second, there is no allegation or evidence that Special Agent Costanzo promised or committed any violation of his official duties in December 2019, which post-dates the 2018 – 2019 scheme period alleged in the Indictment. ECF 1, at ¶ 7. Third, there is no allegation or evidence that Special Agent Costanzo ever promised or committed any violation of his official duties for the benefit of his former girlfriend or TFO-1 at any time, let alone in or around December 2019. The best case the government can make for introducing this evidence is that TFO-1, who was involved in other conduct of the alleged scheme and, was also involved in helping Special Agent Costanzo pay for a lawyer for this very case.

Given the negligible probative value, if any, the Court should preclude its admission in light of the substantial prejudice to Special Agent Costanzo. The simple fact that Special Agent Costanzo retained private counsel is potentially prejudicial. Detailing the amount paid to counsel in the very case being tried before the jury weighs heavily in favor of preclusion. *See United States v. Figueroa Vega*, 2008 WL 11385385, at *8 (D.P.R. April 29, 2008) ("the Court has determined that since said statement contains information regarding which of the accused defendants hired an expensive attorney instead of hiring a public defender, said statement's 'probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury ...'") (citing Fed. R. Evid. 403).

In addition, irrelevant evidence that Special Agent Costanzo initially hired a different law firm to represent him will inevitably lead to prejudicial and distracting questions for the jury, including: Why did Special Agent Costanzo change lawyers? Did initial counsel refuse to represent him for any reason? How much does his current counsel cost him? These questions have no place at this trial. Accordingly, the evidence should be precluded.

### 2. Alleged payment for the renovation of Special Agent Costanzo's condominium

The 3500 material and witness list indicate that the government intends 

Young Decl. Exh. N,     , at 1-2.

.

*Id.*

*Id.* at 2.

*Id.*



Young Decl. Exh. J, ▮▮▮▮▮, at 47, 60-61.

Young Decl. Exh.

N, ▮▮▮▮▮, at 2. For the government to suggest otherwise is a distortion. Thus, the government

should be precluded from introducing confusing evidence about Special Agent Costanzo's

payments to the contractors.

### 3. Watch, furniture, and tickets allegedly from Mr. Recio, Attorney-1, and Attorney-2

The source for any testimony regarding "payments" in the form of a watch, furniture, or

tickets is hearsay rumor. The government should be precluded from presenting this inadmissible

evidence to the jury. Fed. R. Evid. 602; *United States v. Santos*, Case No. 01-cr-537 (DGT), 2010 WL 2985913, at *8 (E.D.N.Y. July 27, 2010) (refusing *Brady* claim and finding that confidential informant's "allegations are not admissible evidence since they are totally unsupported by personal knowledge and consist of nothing but rumor."). The references to gifting furniture in the discovery stem from triple hearsay *three years earlier.* There is no evidence that the government's witnesses have personal knowledge of such alleged gifts. The probative value of such unsubstantiated rumors is minimal, at best.

The Court should preclude the government from introducing these examples of baseless rumors. *Id.* at *8. In the absence of admissible documentary evidence or testimony from a witness with personal knowledge of such events, the testimony is textbook hearsay and therefore inadmissible. *United States v. Garcia*, 413 F.3d 201, 213 (2d Cir. 2005) (explaining that probable cause determinations and grand juries that may rely on hearsay evidence "are distinguishable in that they are not governed by the Federal Rules of Evidence applicable to trials.").

## POINT V

### THE COURT SHOULD EXCLUDE 404(b) EVIDENCE

On September 11, 2023, the government sent a letter to defense counsel that outlined six categories of uncharged conduct that it intends to offer in evidence at trial. Young Decl. Exh. L. The letter was attached to an email entitled "404(b) Notice." However, the letter stated that the categories of evidence are "intrinsic" to the charged conduct. In the alternative, the letter suggested that the conduct is admissible under Fed. R. Evid. 404(b). Precisely what evidence the government seeks to admit is unclear; the evidence is described using only general, and open-ended terms like, "including, among other things," "an example," "and others," and "examples of such."

Whatever the theory of admissibility, the government is wrong. The categories of conduct are neither intrinsic to the offenses charged, nor proper under 404(b). The evidence is inadmissible.

**Legal Standards**

Evidence of uncharged criminal activity is considered direct evidence rather than other crimes evidence under Rule 404(b) if it arose out of the same transaction or series of transactions as the charged offense, is inextricably intertwined with the evidence regarding the charged offense, or is necessary to complete the story of the crime on trial. *United States v. Nektalov*, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)). By characterizing uncharged conduct as "intrinsic to" or "inextricably intertwined with," charged conduct, federal courts have allowed prosecutors to introduce evidence of uncharged acts free from Rule 404(b)'s protections. At this point, "inextricably intertwined" has "become a doctrinal juggernaut capable of battering down ancient evidentiary walls[.]" Milton Hirsch, *"This New-Born Babe an Infant Hercules": The Doctrine of "Inextricably Intertwined" Evidence in Florida's Drug Wars*, 25 Nova L. Rev. 279, 296 (2000). "[W]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *Nektalov*, 325 F. Supp. 2d at 372.

To be admissible under Rule 404(b), the "other act" evidence must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction, where requested, about the purpose for which the jury may consider it. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002); *United States v. Arroyo*, 600 F. App'x 11, 13 (2d Cir. 2015). "[C]aution and judgment are called for, and a trial judge faced with any other crimes evidence problem should require the Government to explain why the evidence is relevant and necessary." *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978). Otherwise, the accused might be convicted because of his participation in the other crimes rather than because he is guilty

beyond a reasonable doubt of the crime alleged. *See United States v. Manafzadeh*, 592 F.2d 81, 86 (2d Cir. 1979).

"[R]elevance is not the end of the inquiry: evidence admitted under 404(b) must be relevant to an issue *in dispute*." *United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012) (emphasis original). And even if relevant to an issue in dispute, FRE 404(b) material is excludable under FRE 403 if its probative value is outweighed by its prejudice. "[T]he probative value of the proffered [Rule 404(b)] evidence depends largely on whether or not there is a 'close parallel' between the crime charged and the acts shown . . . it is an abuse of discretion for the trial court to admit other act evidence if the other act or acts are not sufficiently similar to the conduct at issue." *United States v. Gordon*, 987 F.2d 902, 908-909 (2d Cir. 1993) (citations and quotations omitted). The inherent "risk of an improper criminal propensity inference should be considered in light of the totality of the circumstances, including the government's need for the evidence given other available testimony, to prove the issue identified pursuant to the 404(b) special relevance analysis." *Old Chief v. United States*, 519 U.S. 172, 184 (1997).

A.     **The Government's 404(b) Notice Is Inadequate**

The government's 404(b) notice ("the 404(b) Notice") provides, among other things, that all of the evidence of the events described therein "are specific examples of the charged conduct, as well as . . . direct evidence of, and are inextricably intertwined, with the offenses on trial in this case. . . . and are also admissible pursuant to [FRE] 404(b) . . . because they demonstrate the defendants' knowledge, intent, motive, opportunity, identity, and lack of mistake or accident with respect to the charges in the Indictment; and they will corroborate expected testimony from other witnesses, prove the relationships between and among participants in the crimes charged, and

explain the history and development of the conspiracies charged in the Indictment." Young Decl. Exh. L.

The trial court has the discretion to determine whether notice was sufficient. *See* Fed. R. Evid. 405 Advisory Committee's note to 1991 proposed rules. ("The court in its discretion may, under the facts, decide that the particular request or notice was not reasonable, either because of the lack of timeliness or completeness.").

The notice here is inadequate. FRE 404(b)(3)(B) requires prosecutors to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." The 404(b) Notice fails to comply with these basic requirements. Inserting a catch-all reference to "knowledge, intent, motive, opportunity, identity, and lack of mistake or accident…" does not suffice. This list is nothing more than an incantation of available ways to sweep evidence into the confines of the rule. The 404(b) Notice also lacks reasoning necessary to support the laundry list of "purposes" for the evidence. Put simply, the government fails to establish the relevance of the proffered evidence. On this basis alone, the categories of evidence in the 404(b) Notice should be precluded.

### B.     The Proffered Evidence Should Be Excluded

Irrespective of the deficient notice, whether analyzed as direct evidence or 404(b) evidence, five of the six categories in the 404(b) Notice should be precluded.  The categories of conduct proffered by the government share the same fatal flaws: 1) each category presupposes Special Agent Costanzo and/or Mr. Recio's guilt on the charges alleged in the Indictment to bootstrap the proffered conduct into relevance; and 2) each uncharged vignette or anecdote will take the jury on a confusing detour into the finances of non-parties, mortgage rules, banking requirements, tax law, and employment forms that are completely detached from the charged conduct. The defense will

be required to contest the facts surrounding the uncharged conduct in what will devolve into multiple, complex mini-trials about a series of extraneous subjects. Thus, the government's proffer fails Rule 403's balancing test: the negligible (and unstated) relevance of the uncharged conduct is far outweighed by the substantial delay and confusion it will cause.

### 1.     Category 1 – 2015 Communications

The first category of evidence the government seeks to introduce is information that Special Agent Costanzo provided to Mr. Macey in 2015. "Examples of such communications" are excerpted and cobbled together in an exhibit to the 404(b) Notice. *See* Young Decl. Exh. L at Exh. A. The government fails, however, to specify the extent of what it intends to introduce from 2015 or the relevance of these mystery communications. The evidence from 2015 is most certainly *not* intrinsic to the charges. The Indictment charges Special Agent Costanzo and Mr. Recio with participating in a bribery scheme between October 2018 and November 2019. ECF 1 at ¶ 7. Thus, the proffered 404(b) evidence precedes the "scheme" period by *over three years*. And, according to the Indictment, "[a]t the time of the alleged scheme, Mr. Recio worked as a private investigator and sought the information [from Special Agent Costanzo] to recruit new clients for defense attorneys on an "as-needed basis." *Id*. However, in 2015, Mr. Recio was still an active DEA agent himself. Thus, these 2015 communications make no reference to Mr. Recio or to any payment. Special Agent Costanzo is not charged with an ongoing scheme or plan or course of conduct for multiple years *prior* to 2018 that could otherwise somehow tether such disparate communications to the charged conduct. These 2015 communications are simply not intrinsic to the alleged conduct.

The evidence is also improper under 404(b). The government's conclusory assertions that the evidence is relevant to the defendant's "knowledge, intent, motive, opportunity, identity, and

lack of mistake or accident" is simply boilerplate; it is devoid of any support or articulable theory. The government seems to offer these 2015 communications in furtherance of an argument that because Special Agent Costanzo provided information to Macey in 2015, he must have also been bribed by Mr. Recio years later. That is precisely the kind of propensity evidence barred by Rule 404(b). The proffered 2015 communications should be precluded.

### 2. Category 2 – SARC Email

The government next seeks to introduce evidence that Mr. Recio allegedly improperly sent sensitive and classified information from his government email account to his personal Yahoo email account shortly before his retirement, *including, as an example*, the email attached as Exhibit B to the 404(b) Notice ("SARC Email"). Relatedly, the government seeks to introduce the testimony of ███████, an Inspector in DEA's Agency Office of Professional Responsibility regarding the confidentiality of the information contained in the attachment to the SARC Email and the violation of operational security that resulted from the sending of the email. *See* Young Decl. Exh. A at 1-2 (disclosing the proffered testimony of ███████).

The SARC Email reflects that Mr. Recio, around the time of his retirement, forwarded from his government email to his personal email, an internal DEA email from months earlier that was originally sent by Special Agent Costanzo to various DEA agents, including Mr. Recio. The email discussed an operation involving the targeting of drug traffickers in Venezuela that held government positions.

As noted above, the 404(b) notice on this issue is vague, inadequate and open-ended. The government provides a lone "example," but fails to set forth any other example(s) (or the volume) of this category of evidence. Absent more facts, this type of evidence should be precluded.

Furthermore, *vis a vis* the one SARC Email that is identified, the government has failed to identify the lawful 404(b) purpose for which it would be used.

Even if the government had complied with the notice requirements of Rule 404(b), the evidence would be inadmissible. The uncharged conduct at issue here – Mr. Recio's sending allegedly confidential information to *himself* – is not admissible as direct evidence of the charged conspiracy because it is meaningfully distinct from the charged conduct, in which Special Agent Costanzo is alleged to have given confidential information to Mr. Recio in return for benefits. That Mr. Recio might have violated operational security by forwarding from his DEA email to his personal email allegedly confidential information has nothing at all to do with the charges. The SARC email is not the kind of information without which the jury will not understand the government's theory of the case, and it is not admissible as other acts evidence pursuant to FRE 404(b). Its admission would violate FRE 403 for the same reason – it is distinct from the charged conduct and its probative value is substantially outweighed by the risk of confusion and unfair prejudice to Mr. Recio. The SARC Email is simply irrelevant to the charges.

Even if it were relevant, its probative value would be substantially outweighed by its prejudicial effect. Its introduction is a thinly-veiled attempt to improperly establish propensity. The Court should preclude both the evidence regarding the SARC Email and █████████ testimony related thereto, including testimony about violations of operational security.

### 3. Category 3 – February 1, 2019, John Costanzo, Sr. and Special Agent Costanzo submitted a letter to United Wholesale Mortgage

The government seeks to offer evidence that Special Agent Costanzo and his father submitted a letter to a mortgage company that "falsely stat[ed] that John Costanzo, Sr. has 'made a gift of $50,000' from his "personal savings" to his son, John Costanzo, Jr., in connection with the purchase of 261 Navarre Ave, #C3, Coral Gables, FL 33134." Young Decl. Exh. L.

The "notice" here is lacking. It does not provide any clue what the defense should prepare for or why the form is relevant. The government will likely argue at trial that John Costanzo, Sr. did not gift $50,000 to his son in connection with the purchase of the subject property, and that Costanzo, Sr. was actually the conduit for the transmittal of a $50,000 bribe payment to his son. *See* ECF 1 at 8-9.

Whether or not the letter to the mortgage company was false or omitted necessary information would require veering off into a thicket of complicated issues. It would require an examination of John Costanzo, Sr.'s finances. It would require an explanation of United Wholesale Mortgages's forms and disclosure requirements. Who said what to whom regarding the purchase of the property to the real estate attorneys and mortgage company would become an issue at trial. New witnesses would suddenly become necessary to explain the evolution of the mortgage application. A mortgage fraud sideshow trial would erupt that would delay and confuse the case on trial. *See United States v. Johnson*, 816 F. App'x 604, 610 (2d Cir. 2020) (explaining that Rule 403 permits a district court to exclude evidence that, even if probative to some limited degree, would create a "real risk of distraction" for the jury and could create a "trial within a trial"). This "trial within a trial" is not warranted given the limited probative value of the mortgage application form. The government is in no way hindered without it, yet the defendants risk new uncharged grounds for conviction.

### 4.  Category 4 – Outside Income on 2020 SF86

The government's fourth category of uncharged conduct asserts that: "John Costanzo failed to disclose outside income on his SF86 filed with the DEA in or about 2020." Form SF86 is a standard form questionnaire that federal employees must fill out for national security positions. The government has previously represented that the SF 86 "required him to disclose other sources

of income, which included in-kind payments, which included gifts." Young Decl. Exh. O, June 15, 2023 Hearing Transcript, at 12.

The Court should preclude the government's use of Mr. Costanzo's SF 86 for two reasons. The first reason is quite simple: the government is wrong about the SF86. That questionnaire *does not call for* the disclosure of outside income, in-kind payments, or gifts—anywhere. *See* Young Decl. Exh. L at Exh. D. The government cannot possibly have a valid reason to introduce Special Agent Costanzo's answers to a questionnaire that did not even require him to disclose that which the government claims he concealed. *United States v. Autuori*, 212 F.3d 105 (2d Cir. 2000) ("The fraud statutes are violated by affirmative misrepresentations or by omissions of material information *that the defendant has a duty to disclose*.") (emphasis added). For this reason alone, the Court should preclude the introduction of Mr. Costanzo's SF 86.

Even if the Court were to find some minimal probative value in a questionnaire that did not require the disclosure of outside income, the introduction of the SF86 evidence would create a trial within a trial and confusion would follow for the jury. *United States v. O'Sullivan*, Case No. 20-cr-272 (PKC), 2021 WL 3080330, at *2-3 (E.D.N.Y. July 20, 2021) (precluding 404(b) evidence of related civil litigation which the court described as "a recipe for a 'trial-within-a-trial' that would lead to juror confusion and undue delay"). This is charged as a bribery and honest services fraud case regarding supposed payments in exchange for DEA sensitive information. The introduction of Special Agent Costanzo's SF 86 serves no legitimate purpose in a bribery trial, and, if admitted, would require Special Agent Costanzo to present evidence concerning his understanding of the requirements of the questionnaire, the meaning of various ambiguous terms contained within the form (which *themselves* have been the subject of entire criminal trials in this district), and any training and interpretive guidance provided by the government regarding the

form's requirements – all for the entirely unnecessary purpose of disproving the government's false allegation that the questionnaire called for the disclosure of Special Agent Costanzo's outside income when it did not.

### 5. Category 6 – Tax returns failed to reflect payment and benefits

At the eleventh hour, the government seeks to introduce proof that Special Agent Costanzo supposedly made false statements *on his tax returns*. Permitting the government to expand this already-complicated bribery and honest services fraud case into a tax prosecution would be manifestly unfair.

Statements on Special Agent Costanzo's tax returns are not part and parcel to any supposed bribery payments for DEA information. What Special Agent Costanzo disclosed on his taxes, why he disclosed it, and when he disclosed it, do not go to any of the elements of the alleged crimes. This uncharged conduct is in no way part of a scheme or series of transactions or some similar *modus operandi* as the charged offenses such that it would constitute intrinsic evidence.

This evidence is not proper under 404(b) either. The defense speculates that it will be offered to show that John Costanzo allegedly made false statements to many people about his finances, and therefore he must have received bribery payments. This is simply propensity evidence disguised as "intent" or "absence of mistake." Moreover, to be comprehensible, the conduct will require the jury to appreciate an entirely different regulatory framework, the tax forms themselves, and the materiality of any statements on the tax forms. This will cause unnecessary delay and confusion. The government will need to call an IRS agent to orient the jury to the form. To date Special Agent Costanzo has not retained tax counsel, but might deem it necessary if the tax code becomes an issue at trial as evidence of supposed tax violations would give the jury multiple *uncharged* alternative bases on which to convict the defendant beyond those charged in

the Indictment.  In sum, this request calls to mind the First Circuit's warning that "the prosecution too often pushes the limits of admissibility of [prior bad act] evidence, knowing its propensity power and gambling that the time constraints on the trial court, the court's broad discretion, the elasticity of Rule 404(b), and the harmless error rule of the appellate court, will save it from the consequences of overreaching."  *United States v. Varoudakis*, 233 F.3d 113, 125 (1st Cir. 2000).

For the foregoing reasons the noticed 404(b) evidence should be precluded. If the Court allows the introduction of the proffered testimony, a limiting instruction regarding the purpose for which the evidence is being introduced should be provided at the time of the introduction and upon presentment of the case to the jury. *See e.g.*, *United States v. Silver*, Case No. 15-cr-93 (VEC), ECF No. 399, at 32 (jury instruction that legislator "has not been charged with any crime based on the way in which he filled out his financial disclosure forms.").

## CONCLUSION

For the reasons set forth above, Special Agent Costanzo and Mr. Recio respectfully requests that the Court grant their motions *in limine*.

Dated: New York, New York  
      September 27, 2023

MUKASEY FRENCHMAN LLP

 /s/ Torrey K. Young
Marc L. Mukasey
Torrey K. Young
Stephanie Guaba
Michael Westfal

570 Lexington Avenue
Suite 3500
New York, NY 10022
Tel: (212) 466-6400
Email: torrey.young@mfsllp.com

*Counsel for John Costanzo, Jr.*

GAINOR & DONNER
3250 Mary Street, Suite 405
Miami, Florida
Tel: (305) 537-2000

*Counsel for Manuel Recio*