UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JOHN COSTANZO JR. and
MANUEL RECIO,

　　　　　　　Defendants.

Case No. 22 Cr. 281 (JPO)

## DEFENDANTS' JOINT OPPOSITION TO THE
## GOVERNMENT'S MOTIONS *IN LIMINE*

MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, New York 10022
Tel: (212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for John Costanzo, Jr.*

GAINOR & DONNER
3250 Mary Street, Suite 405
Miami, Florida
Tel: (305) 537-2000
gainorlaw@gmail.com

*Counsel for Manuel Recio*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

POINT I       THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING
EVIDENCE THAT WILL RESULT IN MINI-TRIALS, DETOURS AND
CONFUSION..................................................................................1

     A.     If the Court admits evidence of Special Agent Costanzo's relationship with
defense attorneys three years before the alleged scheme, then fairness dictates the
admission of defense evidence for the same purpose ...............................................2

     B.     ███████████████ ................................................................4

     C.     The Court should preclude an irrelevant mini-trial regarding Family Member-1's
gift letter.......................................................................................................................6

     D.     The Court should preclude a complicated mini-trial on the federal tax code ..........9

     E.     The Court should preclude a mini-trial on an outside employment theory that
neither side alleged .....................................................................................................11

     F.     The Court must allow the defense to meet unfounded arguments that Special
Agent Costanzo destroyed evidence ...................................................................12

POINT II     STATEMENTS OF THE SO-CALLED CO-CONSPIRATORS ARE BARRED
BY THE RULE AGAINST HEARSAY .........................................................14

POINT III    THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING
FAMILY MEMBER-1'S STATEMENTS ...........................................................17

POINT IV    THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING THE
TESTIMONY OF THE "FORMER LAW ENFORCEMENT WITNESS"..........18

     A.     Relevant Background..........................................................................................19

     B.     Discussion ...........................................................................................................21

POINT V     THE ███████████████████████████████████
███████████████████████████████████
███████████ .................................................................................23

     A.     ██████████████████ ............................................................24

     B.     ██████████████████ ............................................................28

POINT VI    ACTIONS OF OTHER LAW ENFORCEMENT AGENTS, THE
DEFENDANTS' *BONA FIDE* LAW ENFORCEMENT EFFORTS, AND THEIR
SERVICE RECORDS ARE HIGHLY RELEVANT TO THE DEFENSE AND
SHOULD BE ADMITTED IN EVIDENCE ..........................................................30

     A.     Actions of other law enforcement agents...............................................................30

     B.     The defendants' *bona fide* law enforcement efforts are admissible .....................38

C.      Evidence of defendants' service records, personal circumstances, and potential punishment ........................................................................................................... 40

POINT VII      THE DEFENSE SHOULD BE PERMITTED TO INTRODUCE EXHIBITS ..... 41

POINT VIII     THE DEFENSE SHOULD BE PERMITTED TO CALL AN EXPERT WITNESS ........................................................................................................ 42

POINT IX       THE DEFENSE SHOULD BE PERMITTED TO OFFER ADDITIONAL PORTIONS OF COSTANZO'S ███████████████████████ TO AVOID MISLEADING THE JURY ................................................................. 44

CONCLUSION .......................................................................................................................... 47

# TABLE OF AUTHORITIES

**CASES**

*Alford v. United States*,
282 U.S. 687 (1931).........................................................................................23

*Bagley v. Lumpkin*,
719 F.2d 1462 (9th Cir. 1983) ........................................................................29

*Brookhart v. Janis*,
384 U.S. 1 (1966).............................................................................................23

*Burr v. Sullivan*,
618 F.2d 583 (9th Cir. 1980) ..........................................................................25

*Chambers v. Mississippi*,
410 U.S. 284 (1973).........................................................................................40

*Corby v. Artus*,
699 F.3d 159 (2d Cir. 2012).............................................................................23

*Cory v. George Card Intl. Circus, Inc.*,
13-cv-760, 2016 WL 3460784 (E.D. Tex. April 6, 2016) ................................2

*Crane v. Kentucky*,
476 U.S. 683 (1986).........................................................................................40

*Davis v. Alaska*,
415 U.S. 308 (1974)..........................................................................23, 25, 28

*Delaware v. Van Ardsdall*,
475 U.S. 673 (1986).........................................................................................25

*Dell'Aera v. James*,
No. 12-CV-00344 (JFB), 2012 U.S. Dist. LEXIS 180290 (E.D.N.Y. Dec. 20, 2012).................

*Giglio v. United States*,
405 U.S. 150 (1972).........................................................................................21

*In re Oliver*,
333 U.S. 257 (1948).........................................................................................40

*Lewis v. Velez*,
149 F.R.D. 474 (S.D.N.Y. 1993) .....................................................................27

*Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp.*,
937 F. Supp. 276 (S.D.N.Y. 1996)....................................................................2

*Rosario v. Kuhlman*,
839 F.2d 918 (2d Cir. 1988).............................................................................40

*Schlapfer v. Commissioner of Internal Revenue*,
Dkt. No. 419-20, 2023 WL 3580897 (T.C. May 22, 2023) ...................................... 10

*Smith v. Illinois,*
390 U.S. 129 (1968) ..................................................................................... 23

*United States v. Ahmed*,
No. 12-CR-661 (SLT)(S-2), 2015 WL 1611947 (E.D.N.Y. Apr. 9, 2015) ............................ 43

*United States v. Al-Moayad*,
545 F.3d 139 (2d Cir. 2008) ............................................................................ 28

*United States v. Andrews*,
811 F.Supp.2d 1158 (E.D. Pa. 2011) .............................................................. 3, 9

*United States v. Avenatti*,
(S1) 19 Cr. 373 (PGG), 2021 WL 2809919 (S.D.N.Y. July 6, 2021) ...................................... 41

*United States v. Bagley,*
473 U.S. 667 (1985) ..................................................................................... 28

*United States v. Balboa*,
No. 12-CR-0196, 2013 WL 6196606 (S.D.N.Y. Nov. 27, 2013) ............................................ 39

*United States v. Benedetti*,
433 F.3d 111 (1ˢᵗ Cir. 2005) ............................................................................ 12

*United States v. Biaggi*,
853 F.2d 89 (2d Cir. 1988) ............................................................................... 37

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ....................................................................... 36, 38

*United States v. Birdsall*,
233 U.S. 223 (1914) ..................................................................................... 38

*United States v. Blackwood*,
456 F.2d 526 (2d Cir. 1972) ............................................................................ 23

*United States v. Bodnar*,
37 F.4th 833n(2d Cir. 2022) ............................................................................ 24

*United States v. Campbell*,
426 F.2d 547 (2d Cir. 1970) ............................................................................ 23

*United States v. Carboni*,
204 F.3d 39 (2d Cir. 2000) ............................................................................... 4

*United States v. Carr*,
424 F.3d 213 (2d Cir. 2005) ............................................................................ 22

*United States v. Castro,*
   813 F.2d 571 (2d Cir. 1987).............................................................................................. 44

*United States v. Cilins,*
   No. 13 CR. 315 WHP, 2014 WL 173414 (S.D.N.Y. Jan. 15, 2014) ...................................... 24

*United States v. Connolly,*
   Case No. 16-cr-370 (CM), 2018 WL 2411216 (S.D.N.Y. May 15, 2018) ............................. 13

*United States v. Cook,*
   776 F.Supp.755 (S.D.N.Y. 1991).................................................................................. 24, 27

*United States v. Damti,*
   109 F. App'x 454 (2d Cir. 2004)........................................................................................ 39

*United States v. Davis,*
   183 F.3d 231 (3d Cir. 1999)............................................................................................... 14

*United States v. Defreitas,*
   29 F.4th 135 (3rd Cir. 2022) ............................................................................................. 38

*United States v. DiCarlo,*
   131 F.Supp.2d 537 (S.D.N.Y. 2001).................................................................................... 3

*United States v. Dimora,*
   843 F.Supp.2d 799 (N.D. Ohio 2012)................................................................................ 13

*United States v. Dupree,*
   870 F.3d 62 (2d Cir. 2017).................................................................................................. 3

*United States v. Elmore,*
   Case No. C05-810JLR, 2006 WL 521660 (W.D. Wash. March 2, 2006) .............................. 10

*United States v. Estrada,*
   430 F.3d 606 (2005)........................................................................................................... 27

*United States v. Fiumano,*
   No. 14 Cr. 0518, 2016 WL 1629356 (S.D.N.Y, April 25, 2016) .................................................

*United States v. Flaharty,*
   295 F.3d 182 (2d Cir. 2002)............................................................................................... 27

*United States v. Forrester,*
   60 F.3d 52 (2d Cir. 1995) .................................................................................................. 22

*United States v. Garvin,*
   565 F.2d 519 (8th Cir. 1977) ..............................................................................................

*United States v. Gaudin,*
   515 U.S. 506 (1995)............................................................................................................

*United States v. Harvey,*
  547 F.2d 720 (2d Cir. 1976)................................................................................... 23

*United States v. Healey,*
  860 F.Supp.2d 262 (S.D.N.Y. 2012)...................................................................... 43

*United States v. Ibisevic,*
  675 F. 3d 342 (4th Cir. 2012) ............................................................................... 46

*United States v. Johnson*,
  529 F.3d 493 (2d Cir. 2008)........................................................................... 21, 22

*United States v. Johnson*,
  816 F. App'x 604 (2d Cir. 2020) ............................................................................. 6

*United States v. Jones*,
  554 F. App'x 460 (6th Cir. 2014) ............................................................................ 4

*United States v. Kohan*,
  806 F.2d 18 (2d Cir. 1986)..................................................................................... 46

*United States v. Lauersen,*
  Case No. 98-cr-1134 (WHP), 2000 WL 1693538 (S.D.N.Y. Nov. 13, 2000) ........ 12

*United States v. Leja,*
  568 F.2d 493 (6th Cir. 1977) ........................................................................... 28, 29

*United States v. Levin,*
  2016 U.S. Dist. LEXIS 3065 (S.D.N.Y. Jan. 8, 2016) .............................................

*United States v. Maldonado–Rivera,*
  922 F.2d 934 (2d Cir. 1990).................................................................................. 27

*United States v. Monteleone,*
  257 F.3d 210 (2d Cir. 2001) .................................................................................. 15

*United States v. Nelson,*
  365 F.Supp.2d 381 (S.D.N.Y. 2005)................................................................. 22, 24

*United States v. Parsons*,
  141 F.3d 386 (1st Cir. 1998).................................................................................. 46

*United States v. Pedroza,*
  750 F.2d 187 (2d Cir. 1984)................................................................................... 24

*United States v. Quinones,*
  511 F.3d 289 (2d Cir. 2007)................................................................................... 46

*United States v. Richardson,*
  837 F.Supp. 570 (S.D.N.Y. 1993)............................................................................ 3

*United States v. Rodriguez,*
    667 F.Supp.2d 223 (D. Mass. 2009) ....................................................... 13

*United States v. Roldan-Zapata,*
    916 F.2d 795 (2d Cir. 1990)................................................................. 4

*United States v. Rosner,*
    516 F.2d 269 (2d Cir. 1975)................................................................. 23

*United States v. Runner,*
    Case No. 18-cr-0578 (JS), 2023 WL 3727532 (E.D.N.Y. May 30, 2023) ...................... 37, 38

*United States v. Scarpa,*
    913 F.2d 993 (2d Cir. 1990)...............................................................

*United States v. Scop,*
    846 F.2d 135 (2d Cir. 1988)................................................................. 22

*United States v. Shavin,*
    287 F.2d 647 (7th Cir. 1961) ............................................................... 39

*United States v. Sheffield,*
    992 F.2d 1164 (11th Cir. 1993)............................................................. 37, 38

*United States v. Tuzman,*
    No. 15 CR. 536 (PGG), 2017 WL 6527261 (S.D.N.Y. Dec. 18, 2017) .................. 43

*United States v. Ulbricht,*
    858 F.3d 71 (2d Cir. 2017)................................................................. 43

*United States v. Williams,*
    930 F.3d 44 (2d Cir. 2019)................................................................. 44

*United States v. Williams,*
    954 F.2d 668 (11th Cir. 1992) .............................................................. 28

## OTHER AUTHORITIES

USSG §1B1.4.......................................................................................... 26

## RULES

Fed. R. Evid. 106 ................................................................................... 44

## REGULATIONS

26 C.F.R. § 25.2501-1(a)(1)...................................................................... 10

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted by defendants John Costanzo, Jr. and Manuel Recio in opposition to the government's motions *in limine*. The government's motions have one consistent, disturbing theme: they seek to ensure that the government can present to the jury misleading half-stories, and hide from the jury the complete and true account of the persons, conversations and events at issue. For example, the government wishes to play for the jury only self-serving snippets of audio recordings, while denying the jury the full framework and context in which the statements were made. The government aims to paint a picture of the defendants as corrupting the law enforcement process, but keep from the jury that the defendants were engaged in *bona fide* efforts to further law enforcement objectives. And the government proposes to call a cooperating witness ("CW") to testify about the alleged crimes of the defendants, while hiding from the jury the CW's bias and his motives to fabricate. In short, wherever the facts may undermine their theory of the case, the government moves to muzzle the defendants.

If the defense is restricted as the government proposes, the jury would reach a verdict based on fragments of conversations, artificially modeled events, and misleading communications. The government's motions should therefore be denied.

## POINT I

### THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING EVIDENCE THAT WILL RESULT IN MINI-TRIALS, DETOURS AND CONFUSION

The government's first motion invites the Court to admit an array of irrelevant and prejudicial evidence that will lead down rabbit holes and into mini-trials that have nothing to do with the charged offenses. The Court should decline the government's invitation and exclude the proffered evidence. The government claims, for example, that evidence from more than three years before the alleged bribery scheme is "direct evidence" of a bribery scheme. It also seeks

1

the admission of several categories of evidence on a 404(b) theory for which it failed to provide

the written notice required by the Federal Rules of Evidence. No matter the theory put forth by

the government, its proffered evidence should be excluded.

###### A. If the Court admits evidence of Special Agent Costanzo's relationship with defense attorneys three years before the alleged scheme, then fairness dictates the admission of defense evidence for the same purpose

The government first seeks the admission of unspecified evidence of Special Agent

Costanzo's relationship with Attorney-1 and Attorney-2. The government refers to ███████

███████████████████████████████████████████ but only provided one such ███

███████████ in its 404(b) notice. ECF No. 117-12, at 1, 5-12. A district court should deny

a motion *in limine* where the movant fails to provide the specific evidence that it seeks to admit

because an opponent cannot respond to vague, generalized proffers of evidence. *Nat'l Union*

*Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)

("This motion in limine lacks the necessary specificity with respect to the evidence to be

excluded or the purported reason for the introduction of such evidence."); *see also Cory v.*

*George Card Intl. Circus, Inc.*, 13-cv-760, 2016 WL 3460784, at *1 (E.D. Tex. April 6, 2016)

("[C]ouching a motion in limine item or a response in vague language supported by universally

applicable citations is a waste of time.").

A defense motion *in limine* addressed the irrelevance of the lone "example" of this

category of evidence that the government provided with its purported 404(b) notice. ECF No.

118, at 31-32. The government's motion does nothing to alter the calculus, and once again

simply block-quotes from Rule 404(b) to assert that the 2015 text message exchange "is

admissible to prove, among other things, intent, preparation, plan, and lack of mistake or

accident." ECF No. 113 at 6. Such boilerplate assertions offer the Court no basis to admit this

2

"evidence," and the defendants no meaningful opportunity to oppose its admission. *United States v. DiCarlo*, 131 F.Supp.2d 537, 538 (S.D.N.Y. 2001) (requiring amended 404(b) notice "[a]fter the Court held that the January 30 letter was too vague to provide adequate notice even under the modest requirements of Rule 404(b)") (citing *United States v. Richardson,* 837 F.Supp. 570, 575–76 (S.D.N.Y. 1993)). The government's motion should fail for that reason alone.

The government offers three purported justifications for the admission of this evidence. First, it claims the text messages will prove that "Costanzo had a pre-existing corrupt relationship" with Attorney-1 and Attorney-2. ECF No. 113 at 6. This is bunk. Neither attorney has been charged with wrongdoing and there is nothing in the ██████████ to suggest that Special Agent Costanzo's relationship with Attorney-1 was "corrupt." Conclusory assertions with no basis in the proffered evidence cannot justify the admission of ██████████. *United States v. Andrews*, 811 F.Supp.2d 1158, 1176 (E.D. Pa. 2011) ("conclusory statements" about the link between proffered evidence and an element of the charged crime "do not render the evidence admissible").

Second, the government resorts to caselaw that bears no resemblance to this case to argue that the proffered evidence will "help explain how the *illegal* relationship between the participants in the crime developed." ECF No. 113 at 7 (emphasis added). The government cites *United States v. Dupree*, a drug trafficking and murder case where the government introduced "testimony that in the early 1990s [the defendants] conspired to sell crack cocaine in Maryland, carried guns, and conspired to kill rival drug dealers." 870 F.3d 62, 74 (2d Cir. 2017). The government also cites to *United States v. Roldan-Zapata*, a drug conspiracy case where testimony was introduced from a cooperating witness concerning his prior cocaine transactions

with one of the defendants. 916 F.2d 795, 804 (2d Cir. 1990). There is nothing "illegal"—or even improper—about a friendship between a DEA agent and a defense attorney.

This leads to the third purported justification for the ███████████████. If the government seeks to introduce evidence from 2015 for the broader purpose of proving the preexisting relationships between Special Agent Costanzo and Attorney-1 and Attorney-2—which were neither "corrupt" nor "illegal"—then the government *must* concede that the nature of those relationships is relevant to the charges here. And with that concession, the government cannot object to evidence proffered *by the defendants* concerning their friendships with Attorney-1 and Attorney-2. As the government concedes in its motion, such evidence is "necessary to complete the story of the crime on trial" and to explain "how the relationship between Costanzo and the Defense Attorneys developed[.]" ECF No. 113 at 6 (citing *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)). Permitting the government but not the defense to introduce evidence on the background of these relationships would result in the one-sided, biased presentation to the jury that the Federal Rules of Evidence are designed to avoid. *See United States v. Jones*, 554 F. App'x 460, 469 (6th Cir. 2014) (reversing conviction where the government "selectively presented evidence of an amicable relationship [between defendant and cooperating witness] while the district court kept out evidence of prior assaults by [cooperating witness] against [the defendant].").

In simple terms, the government cannot have it both ways.

**B.** ██████████████

The government argues that Mr. Recio's sending himself emails containing purportedly confidential information from his DEA email to his personal email is evidence of his "preparation" for the charged bribery scheme. *See* ECF No. 113 at 7-9. The government

identifies only one such email ████████████. As detailed in the defense motion *in limine*, the ████████████ is not admissible—neither as direct evidence of the charged conspiracy nor pursuant to Fed. R. Evid. 404(b). *See* ECF No. 118.

Shifting from the theory propounded in its 404(b) notice that the defense addressed in its motion *in limine*, the government now attempts to link ████████████ to the charged conspiracy based on a subsequent conversation between Special Agent Costanzo and Mr. Recio. Without any factual support, the government suggests that Special Agent Costanzo and Mr. Recio discussed the forwarded email. This is pure speculation. Next, the government associates the ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ with Mr. Recio and Special Agent Costanzo █████████████████████████████████████ ██████████████████████. The government does not provide any support for linking ██ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████

In fact, upon information and belief, the conversation ██████████████████████ ██████████████████████████████. And despite the superficial appeal to connect ██ ████████████ and a subsequent phone call, the government's motion *in limine* makes clear that ████████████████████████████████████ Nor does the government assert (nor can it) that a NADDIS search was conducted by Special Agent Costanzo regarding the individual nor that Mr. Recio in any way used any information about this individual.

And most significantly, the government misrepresents ████████████████████████ ███████████████████████████████████████████████████████████

███████████████████████████████████████████████. The information was thus neither confidential nor non-public.

Whether analyzed as direct evidence or 404(b), the ███████████ is inadmissible. It is unrelated to the charged conduct and is otherwise a thinly veiled attempt to introduce propensity evidence. The government's discussion of the ███████████ in its opening argument lays bare its intention to highlight this irrelevant event. *See* ECF No. 113 at 3. The Court should preclude introduction of the ██████████ and discussion of it at trial, plus the related testimony of the government's expert regarding violations of operational security.

### C.     The Court should preclude an irrelevant mini-trial regarding Family Member-1's gift letter

The government next seeks permission to offer evidence that would trigger three distracting and confusing mini-trials. First, the government seeks to introduce ███████████████ ██████████████████████████████████████████████████████████████ ████████████████. ECF No. 113 at 9-10. The government asserts that ████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████. *Id.*

The defendants described in their motion *in limine* the various categories of evidence and testimony that would have to come in to address the government's allegations. ECF No. 118, at 33-34. The defendants will not repeat those categories here since the government's motion does not explain how, if this evidence were admitted, a mini-trial about ████████████████████ ███████████████████████. *See United States v. Johnson*, 816 F. App'x 604, 610 (2d Cir. 2020) (explaining that Rule 403 permits a district court to exclude evidence that, even if probative to some limited degree, would create a "real risk of distraction" for the jury and could create a "trial within a trial").

6

The government's entire premise is wrong. The government argues that ███████

████████████████████████████████████████████████. ECF No. 113 at 9. ███████

████████████████████████████████████████████████████████. As the

Court is aware, the only alleged "bribe payors" here are Mr. Recio, and (arguably) Attorney-1

and Attorney-2. The government's theory is not that TFO-1 was bribing Special Agent Costanzo,

but that he was a *conduit* for bribes paid by Mr. Recio: "The evidence at trial will show that

TFO-1 was one of several conduits Costanzo, Recio, and others used to direct bribery payments

to Costanzo." ECF No. 113 at 9. This makes sense considering there is not even an allegation

that Special Agent Costanzo ever acted to benefit TFO-1.

Out of the $70,000 that TFO-1 allegedly transferred to Special Agent Costanzo, the

government admits in its brief that only "$20,750 of [that $70,000] can be traced to payments

from Recio." *Id.*  It necessarily follows that TFO-1's $50,000 down payment for the purchase of

Special Agent Costanzo's home *cannot* be traced to Mr. Recio. And since there is no evidence or

allegation that the down payment can be traced to Attorney-1 or Attorney-2—and it cannot—that

concession alone is enough to show that ███████████ is an irrelevant sideshow.

The Court should also preclude the introduction of ███████████ because the

government cannot prove ████████████████████████. The government claims that it

was a ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████. ECF No. 113 at 9; ECF No. 117-12, at 31-34. The

government asserts that ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ .

Whatever information the government thinks should have appeared on that form, it was

not sought or required by ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ It never did. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ . The proffered evidence should be precluded on that basis as well.

The government's concealment theory also has no merit. The government argues that

Special Agent Costanzo "conceal[ing] the stream of payments . . . demonstrates that the

payments were linked to the provision of information." ECF No. 113 at 10. The government

offers no rationale for this far-fetched *non sequitur*, but it fails because, as noted above, the

government has conceded that ████████████████████ cannot be traced to any information

that Special Agent Costanzo allegedly provided to Mr. Recio. Nor does it follow ████████████

████████████████████████████████████████████████

████████████████████ was really a bribe. It is an illogical proposition. And while the

government claims that the trial "will include many examples of Costanzo hiding his relationship

with Recio and others as part of the bribery scheme[,]" it does not provide a single example of

such alleged concealment in support of its motion. ECF No. 113 at 10. Once again, the

government's conclusory assertions render its argument too vague for a response from the

defendants or a ruling from the Court. *Andrews*, 811 F.Supp.2d at 1176 ("conclusory statements"

8

about the link between proffered evidence and an element of the charged crime "do not render the evidence admissible"). If the government had evidence of Special Agent Costanzo hiding his relationship with Mr. Recio from anyone, it would have provided it.

**D.    The Court should preclude a complicated mini-trial on the federal tax code**

The government also seeks to introduce Special Agent Costanzo's 2019 tax returns and to call an IRS agent to testify about the returns. ECF No. 113 at 10-12. This is bootstrapping by the government masquerading as consciousness of guilt evidence. The government argues that Special Agent Costanzo's alleged "failure to report payments associated with Recio, TFO-1, Attorney-1, and Company-1 (through which bribe payments were funneled), provide direct evidence that he understood that this money was not legitimate income." ECF No. 113 at 11. The government argues that this evidence is also relevant to an "expected" defense — "namely that the payments Costanzo received throughout the course of the scheme were unrelated to the sensitive DEA information he provided." *Id.* The government should have been able to deduce as much when Special Agent Costanzo pleaded not guilty.

Whatever justification the government may offer for wanting to present Special Agent Costanzo's tax returns, it boils down to this—the government clamors to argue to the jury that the alleged payments were bribes because, otherwise, Special Agent Costanzo would have disclosed them on his tax returns. ECF No. 113 at 11-12 ("Costanzo's efforts to conceal the payments he received from Recio and others ties those payments to the overall scheme to provide confidential law enforcement information in exchange for benefits."). The government is asking the Court's permission to make that argument for ███████████████, even though it has now conceded that the down payment was *not* a bribe. ECF No. 113 at 9. The defendants showed in their motion *in limine* that introducing Special Agent Costanzo's tax

9

returns will lead to another inevitable mini-trial on the arcane requirements of the federal tax code. ECF No. at 36-37. That is enough of a reason to keep the evidence out of this trial. *United States v. Elmore*, Case No. C05-810JLR, 2006 WL 521660, at *1 n.2 (W.D. Wash. March 2, 2006) (noting that the Internal Revenue Code "imposes byzantine obligations that are, at times, a challenge even for this court to interpret, a challenge that can only be greater for a taxpayer like [the defendant], who is untrained in the law.").

The premise of the government's motion is that Special Agent Costanzo needed to disclose "more than $70,000" on his tax returns. ECF No. 113 at 10. But that premise is questionable for the three categories of alleged payments that comprise the $70,000. First, the federal tax code indicates that the *recipient* of a down payment gift need not disclose that gift on his taxes. *Cf. Schlapfer v. Commissioner of Internal Revenue*, Dkt. No. 419-20, 2023 WL 3580897, at *5 (T.C. May 22, 2023) ("Individuals subject to the gift tax *who make* a transfer by gift must file a gift tax return, Form 709, for the year the transfer is made.") (emphasis added). Second, with respect to ██████████████████████████████████ ██████████████████████████████████, the federal tax code suggests that taxpayers need not disclose personal gifts up to the annual withholding limit for that particular year. 26 C.F.R. § 25.2501-1(a)(1) (Gift tax "applies to all transfers by gift of property, wherever situated, by an individual who is a citizen or resident of the United States, to the extent the value of the transfers exceeds the amount of the exclusions authorized by section 2503[.]"). In 2019, the annual exclusion limit per gift recipient was $15,000. IRS *What's New – Estate and Gift Tax* for 2019, https://www.irs.gov/businesses/small-businesses-self-employed/whats-new-estate-and-gift-tax (last visited Oct. 4, 2023) (annual exclusion amount of $15,000 for 2018 through 2021). Third, as to $20,750 in alleged payments from Global Legal Consulting to Company-1, the

government cannot explain why Special Agent Costanzo needed to disclose payments to a company in which he held no interest whatsoever. The government notes that those payments were not reflected in the tax returns of TFO-1 either, but omits to state that they *were* reflected on the only tax returns that matter—those of Company-1, the entity that received the $20,750 in payments. Young Decl. Exh. A. Of course, at trial, these complicated topics would need to be addressed by special tax counsel or a CPA—neither of which can happen at the eleventh hour.

The Court should not allow the government to bootstrap tax evidence into the case by presuming guilt on the bribery charges, or turn this case into a complex tax prosecution when it is unclear what needed to be declared and what did not. The tax returns should be excluded.

**E.     The Court should preclude a mini-trial on an outside employment theory that neither side alleges**

The government also seeks to admit evidence that Special Agent Costanzo "failed to seek authorization to engage in outside employment from DEA" or "to report . . . such outside employment on his SF86 form." ECF No. 113 at 12-14. Again, the government wants to use these alleged omissions to show consciousness of guilt or attempt to conceal. The government claims that such evidence "is critical to rebutting an expected defense that Costanzo received the payments in exchange for legitimate services rendered that were unrelated to the confidential information he as obtaining from the DEA." ECF No. 113 at 13.

This motion can be swiftly rejected: the defense will not argue that Special Agent Costanzo had any outside employment or that any payments he received were from outside employment. As reflected in Special Agent Costanzo's ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████.[1]

Accordingly, the Court should preclude the government from introducing evidence that shows a supposed failure to declare, disclose, or get permission for, outside employment since the government has no good faith basis for such an argument. *United States v. Lauersen*, Case No. 98-cr-1134 (WHP), 2000 WL 1693538, at *1 (S.D.N.Y. Nov. 13, 2000) (precluding defense, absent a good-faith basis, from presenting evidence or argument "that directly contradict specific factual assertions summarized in the Form FD-302 prepared by the Government.").

**F.    The Court must allow the defense to meet unfounded arguments that Special Agent Costanzo destroyed evidence**

Finally, the government seeks to introduce evidence that Special Agent Costanzo allegedly "destroyed evidence," despite not disclosing that category of evidence in its 404(b) notice. Young Decl. Exh. B. First, the government alleges that Special Agent Costanzo "deleted dozens of highly relevant text messages where he and Recio discussed the scheme." ECF No. 113 at 14. To the extent the government may introduce such evidence and present a consciousness of guilt theory to the jury, the defense must be permitted to introduce text messages and other evidence and argument to rebut that theory. *United States v. Benedetti*, 433 F.3d 111, 115 (1st Cir. 2005) (affirming admission of flight evidence where "the appellant was free to adduce evidence suggesting an innocent purpose for his abrupt departure.").

For example, the government notes in a footnote that "chats with Attorney-2 recovered from Costanzo's phone cover a period from January 28, 2015 to September 20, 2015 and then

---

[1] Indeed, the government's position has never been that Special Agent Costanzo was an employee of Company-1. Its consistent position before the grand jury and before this Court has been that Company-1 was merely a "shell," a "sham," and a "slush fund," to funnel bribes to Special Agent Costanzo.

begin again in September 2018." ECF No. 113 at 6 n.1. The defense should be permitted to show, for example, nearly identical gaps in Special Agent Costanzo's communications with DEA colleagues having nothing to do with the charged crimes. The defense should also be permitted to argue that Special Agent Costanzo's preservation of communications with his alleged co-conspirators throughout the supposed scheme period reflects good faith, a consciousness of innocence, and a lack of criminal intent. *Cf. United States v. Connolly*, Case No. 16-cr-370 (CM), 2018 WL 2411216, at *13 (S.D.N.Y. May 15, 2018) ("Thus, if the court were to allow [defendant] to argue 'consciousness of innocence' based on his decision to waive extradition, the court would necessarily have to permit the Government to present evidence and argue that the defendant's decision had nothing to do with 'consciousness of innocence,' but rather was motivated by other non-exculpatory factors."). The defendants will request jury instructions that deal with both consciousness of guilt and consciousness of innocence evidence. *United States v. Rodriguez*, 667 F.Supp.2d 223, 225-26 (D. Mass. 2009) (reviewing jury instructions on consciousness of guilt and consciousness of innocence).

The government also indicates that it plans to argue that Special Agent Costanzo destroyed the so-called "scheme phone." ECF No. 113 at 14. The government should be precluded from uttering this highly prejudicial phrase (or similar phrases like "burner phone") that no fact witness ever used and that is simply a government pejorative. ECF No. 113 at 2; *United States v. Dimora*, 843 F.Supp.2d 799, 847 (N.D. Ohio 2012) (precluding government from referring to county commissioner charged with bribery as the "corrupt commissioner" at trial). But the government should also be precluded from arguing that Special Agent Costanzo destroyed evidence merely because the government searched his apartment in Virginia for a few hours and could not find it. ECF No. 113 at 14. The government introduced no evidence

13

suggesting that it searched Special Agent Costanzo's office at DEA Headquarters in Washington DC, or any DEA storage facilities, or any other place where the phone may be located.

Nor has the government introduced any evidence that Special Agent Costanzo was aware of the government's surveillance before the execution of the search warrant. *United States v. Davis*, 183 F.3d 231, 244 (3d Cir. 1999) (reversing obstruction of justice conviction where there was not "a shred of evidence" that the defendant was aware of pending grand jury proceeding). The lack of such evidence, coupled with the government's failure to take any additional investigative steps to locate the phone after the execution of the search warrant should preclude any suggestion that Special Agent Costanzo knowingly destroyed the so-called "scheme phone" or obstructed justice. There is not a shred of evidence to support such an argument.

**POINT II**

**STATEMENTS OF THE SO-CALLED CO-CONSPIRATORS ARE BARRED BY THE RULE AGAINST HEARSAY**

The government's effort to shoehorn classic hearsay into "co-conspirator statements" should be rejected. In Special Agent Costanzo and Mr. Recio's prior brief, the defense refuted the government's unsupported application of Fed. R. Evid. 801(d)(2)(E) as to each of the four individuals included in the government's notice. In opposition to the government's motion *in limine,* the defense adds the following[2]:

---

[2] The Defense motion (ECF No. 114, filed under seal) addresses the communications the government included in its 801(d)(2)(E) Notice.  The government's application of 801(d)(2)(E) is a moving target, as the government appears to have abandoned TFO-1, and Attorney-1 as co-conspirators.  TFO-1 and Attorney-1's communications are not included in the government's motion *in limine* (ECF No. 113).

14

Neither CW nor Attorney-2[3] are co-conspirators. The proffered statements are inadmissible.

<u>CW</u>

The government conveniently labels CW as a co-conspirator to circumvent the Federal Rules of Evidence, but nothing in the record supports this.

The government repeatedly asserted that CW ███████████████████████ ████████████████████████████████████████████████. ECF No. 114, at 6. CW cannot simultaneously be a co-conspirator and informant. *United States v. Monteleone*, 257 F.3d 210, 221-22 (2d Cir. 2001) ("We draw a distinction between a co-conspirator who exchanges information with the government while still pursuing the conspiracy's criminal objectives, and one whose conduct as a 'co-conspirator' is shaped and directed by the desires of the government.").

A clear indicia of CW's lack of co-conspirator status is CW's ███████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████████ ███████████████████. Young Decl. Exh. C. Finally, the government throughout its motion describes CW not as a co-conspirator, but as someone the defendants "attempted" to recruit into their bribery scheme. ECF No. 113 at 19, 21.

---

[3] The government appears to have mistakenly referenced Attorney-2 as Attorney-1 in Point II of its motion *in limine.*

Attorney-2

The government also fails to show that Attorney-2 is a co-conspirator. Incongruously, in support of its preliminary showing as to Attorney-2, the government ███████████████ ███████████ CW and Attorney 2, (ECF No. 113 at 14), ████████████████████████ ████████████████████████. ECF No. 113 at 16-17.

The government says that it intends to introduce ██████████████ that Attorney-2 made to the CW ████████████████████████████████████████ ████████████████████. ECF No. 113 at 14. The government purports to provide two examples of such statements to justify its use of FRE 801(d)(2)(E). ECF No. 113-1. Neither makes any showing of Attorney-2's knowing participation in a criminal bribery conspiracy centered on the disclosure of confidential DEA information. The first is ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████. No evidence of confidential information provided by Special Agent Costanzo, and no evidence of any payments—that is, no evidence of a conspiracy. The second example ████████████████ ████████████████████████████████████████████████████████████ ██████████.

In an attempt to bolster its position that Attorney-2 was a co-conspirator, the government provides ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ ECF No. 113 at 16-17. The government leaves out of its motion that ████████████████████████████ ████████████████████████████████████████████████████████

16



Finally, the government ████████████████████████████████████

███████████████████████████████████████████████████████████

ECF No. 113 at 17. The government cut from its ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████.

    The government has failed in carrying its burden to make a preliminary showing that any of the individuals mentioned in the 801(d)(2)(E) Notice were co-conspirators or that their statements were made in furtherance of the conspiracy. The request to admit any statements of those individuals under FRE 801(d)(2)(E) should be rejected by this Court.

## POINT III

### THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING FAMILY MEMBER-1'S STATEMENTS

    The government's motion to admit ████████████████████████████████ should be quickly denied. The motion wreaks of unfair, retaliatory tactics. By way of background:

On September 11, 2023, the government disclosed by letter that it would seek to admit, pursuant Fed. R. Evid. 801(d)(2)(E), certain statements made by three supposed "unindicted co-conspirators" in furtherance of the conspiracy. Family Member-1 was not implicated.

Thereafter, on September 15, 2023, the defense furnished to the government its list of potential witnesses, which included Family Member-1.

As a direct result of the fact that the defense listed Family Member-1 as a witness, the government has now struck back, seeking to admit Family Member-1's statements under Fed. R. Evid. 801(d)(2)(E). Put another way, after the government learned that the defense might call Family Member-1 as a witness, the government suddenly noticed him as a co-conspirator.

This kind of gamesmanship should be disallowed. The motion to admit Family Member-1's statements should be denied.

## POINT IV

### THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING THE TESTIMONY OF THE "FORMER LAW ENFORCEMENT WITNESS"

The government intends to call ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 113 at

19. In this regard, the government moves the Court to permit ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 113 at

27-29. This testimony is improper for multiple reasons and must be precluded.[4]

---

[4] 

## A.      Relevant Background



*See* Young Decl. Exh. D.

On August 5, 2022, counsel for Special Agent Costanzo ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Young Decl. Exh. E.

On August 8, 2022, counsel for Special Agent Costanzo requested that the government produce to the defense all materials relating to the T-III in contemplation of a motion to suppress.

On September 2, 2022, the government responded, in sum and substance, that it understood its discovery obligations and had given counsel everything that was required at the time. *See* Young Decl. Exh. F.

On March 13, 2023, defense counsel moved to suppress the T-III ▮▮▮▮▮▮▮▮ *. See* ECF No. 63. Special Agent Costanzo argued at the time that the FBI affiant misrepresented and omitted ▮▮▮▮▮▮ ECF No. 63 at 10.

19

In opposition to the suppression motion, the government ██████████████████ ████████████████████████████████████████████████████ ███████████████████████. ECF No. 65, Ex. C-1 at 3. ███████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████. Young Decl. Exh. G, June 15, 2023 Hearing Tr. at 26:19-20. ██████████████████ ████████████████████████████████████████████████████

*See id.* at 24:7-11 ███████████████████████████████████.

After the suppression motion was denied, the government produced ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████

██ ████████████████████████████████████

██ ████████████████████████████

██ ████████████████████████████████

Even more troubling, according to ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████     *Id.* at 24 *with* ECF No. 65, Ex. C-1 at 3.[5]

To make matters even worse, we are now fourteen months removed ████████████████

████████████████████████████████████████████████████

███████     *See  Giglio  v.  United  States*, 405  U.S.  150  (1972).  ████████████████

██████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████     *See* Young Decl. Exh. I.

**B. Discussion**

Now, the government moves the Court ██████████████████████████████

████████████████████████     ECF 113 at 27,  ███████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████

---

[5] █████████████████████████████████████████████████████
████████████████████████████████████████████

[6] The government represented to defense counsel it planned to review the report (along with all archived DEA files) on September 21, 2023 and stated that "[DEA] can usually authorize disclosure in a day or two."  Young Decl. Exh. J.  Two weeks later, and still no disclosure.

Camacho's proposed testimony would flout established Second Circuit law. *See United States v. Johnson*, 529 F.3d 493, 499 (2d Cir. 2008) (impermissible for a government agent to vouch for a government witness), *see United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005); *United States v. Forrester*, 60 F.3d 52, 63 (2d Cir. 1995), or generally to opine on the credibility of witnesses. *See United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988). Furthermore, in telling the jury that information obtained in the investigation corroborated the statements of witnesses who had accused the defendant, [the agent's] testimony obscured the important distinction between argument and evidence). *Johnson*, 529 F.3d at 499.

███████████████████████████████████

████████████████████████████ *United States v. Nelson*, 365 F.Supp.2d 381, 392 (S.D.N.Y. 2005). █████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

The proposed testimony █████████████████████████████ ██████████████████████████████ It would be a miscarriage of justice. ██████████████████████████████

█████

## POINT V

**THE** ███████████████████████████████████████████
███████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████

████████ The motion should be denied. Both topics are highly probative of the CW's credibility and the caselaw is crystal clear that they are proper – indeed critical - subjects for cross-examination.

The right to cross-examine a witness to impeach his credibility or show motive or prejudice is fundamental to a fair trial. *Davis v. Alaska*, 415 U.S. 308 (1974).  A party may conduct a "general attack on the credibility of the witness," or it may mount a "more particular attack on the witness' credibility . . . by . . . revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."  *Id.* at 316. As Chief Justice Burger stated in *Davis*, the denial of the "right of effective cross-examination . . . 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" *Id.* at 318 (quoting *Brookhart v. Janis*, 384 U.S. 1, 3 (1966), and *Smith v. Illinois,* 390 U.S. 129, 131 (1968)*.*

It follows therefore that a defendant has a constitutional right to cross-examine a witness to show a bias arising out of a government offer of leniency or immunity. *Alford v. United States*, 282 U.S. 687 (1931); *Corby v. Artus*, 699 F.3d 159, 166 (2d Cir. 2012) (holding that the Confrontation Clause "affords a defendant a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony.") The rule is that "[i]n attempting to establish the motives or bias of a witness against him, a defendant may . . . elicit

23

evidence showing that the government made explicit promises of leniency in return for cooperation." *United States v. Campbell*, 426 F.2d 547, 549 (2d Cir. 1970). Such evidence, which demonstrates a special motive to lie, is peculiarly probative and never collateral, "for if believed it colors every bit of testimony given by the witness whose motives are bared." *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972); *United States v. Harvey*, 547 F.2d 720, 722-724 (2d Cir. 1976). See also *United States v. Rosner*, 516 F.2d 269, 273 n.2 (2d Cir. 1975).

The Second Circuit has noted that "[w]ide latitude should be allowed ... when a government witness in a criminal case is being cross-examined by the defendant, and the trial judge's discretion cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." *Nelson*, 365 F.Supp.2d at 386  (quoting *United States v. Pedroza*, 750 F.2d 187, 195–196 (2d Cir. 1984)).

███████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████. It is true that courts in the Second Circuit have observed that violent crimes as a general matter do not bear "directly" on credibility. ██████████████████████████

█████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████

It is well settled that a cooperating witness's credibility is anchored in his agreement with the government, which requires him to testify truthfully or forfeit all the potential benefits of the

cooperation agreement. *See United States v. Cilins*, No. 13 CR. 315 WHP, 2014 WL 173414, at

*3 (S.D.N.Y. Jan. 15, 2014). Therefore, a witness's cooperation with the government can be used

to impeach the witness under Federal Rule of Evidence 608. *See, e.g., United States v. Bodnar*,

37 F.4th 833, 844 (2d Cir. 2022) (noting that defense counsel properly "used the cooperation

agreements to probe any biases that the government's witnesses might harbor, including that

their testimony was given in exchange for the possibility of leniency at sentencing"). *See also*

*United States v. Cook*, 776 F.Supp. 755 (S.D.N.Y. 1991) ("it is no doubt proper to cross-examine

a cooperating defendant-witness concerning his cooperation and how it may affect his

sentence"). The right to cross-examine a witness as to the nature of any agreement he has with

the government or any hope of leniency in exchange for his cooperation includes the right to

cross-examine with respect to unprosecuted crimes. *See, e.g., Burr v. Sullivan*, 618 F.2d 583,

587–88 (9th Cir. 1980) (Kennedy, J.).

███████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████ (Young Decl. Exh. D,

p. 2). This is *precisely* the kind of benefit to a witness that courts must allow a criminal

defendant to explore on cross-examination. *See Delaware v. Van Ardsdall*, 475 U.S. 673 (1986)

(trial court's ruling prohibiting the defendant's inquiry into the possibility that a witness was

biased as a result of state's dismissal of pending public charge violated the defendant's rights

secured by the confrontation clause); *Davis,* 415 U.S. at 318 (defendant should have been

allowed to cross-examine prosecution witness about his relationship with law enforcement,

which may have provided the witness with a motive to fabricate accusations against defendant in

25

order to obtain leniency). 

Young Decl. Exh. D, p. 3.

      USSG §1B1.4 allows the CW's sentencing judge to consider, "without limitation, any information concerning the background, character and conduct of the defendant."

26

████████████████████████████ They are "central to an assessment of

the witness's reliability." *United States v. Maldonado–Rivera,* 922 F.2d 934, 955 (2d Cir. 1990).[8]

The government gains no mileage from *United States v. Flaharty*, 295 F.3d 182 (2d Cir.

2002) or *United States v. Estrada*, 430 F.3d 606 (2005). In the former case, the trial court

*permitted* cross-examination concerning a murder. *Flaharty,* 295 F.3d at 191. In the latter, the

court observed that "the gravity of an offense may bear on truthfulness, to the extent that more

serious offenses indicate a stronger willingness to ignore the law," and "that particularly heinous

crimes may be high in probative value insofar as they reflect a rejection of social mores."

*Estrada*, 430 F.3d at 618 (internal citations omitted). ██████████████████

███████████████████████████████

███████████████████████████████

██████████

██████████████████████████

███████████████████████████

███████████████████████████

██████████████████ *Lewis v. Velez*, 149 F.R.D. 474, 482 (S.D.N.Y. 1993).

### B.  Government Payments to the CW

_____

[8] ███████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
███████ Young Decl. Exh. K.
        *See Cook*, 776 F.Supp. at 757.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

This motion should be swiftly denied.

There is little that goes more directly to a witness's bias than having received payment from the party sponsoring his testimony, here, the U.S. government. The Supreme Court has recognized that a defendant's right to be apprised of the government's compensation arrangement with a witness, *see United States v. Bagley,* 473 U.S. 667, 683-84 (1985), and to inquire about it on cross-examination, *cf. Davis,* 415 U.S. at 315-17, must be vigorously protected.  Along those lines, the Second Circuit has observed that the large amount of money a witness was paid to furnish information to the FBI provided a significant motive to fabricate testimony. *See United States v. Al-Moayad*, 545 F.3d 139, 179 (2d Cir. 2008).

███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████

In any event, past payments go to bias as well. "Past rewards are actually more important than remuneration for the case at hand, since pay for the case at hand comes after the work is done. Evidence of past rewards shows what an informant can expect by making a case." *United States v. Leja,* 568 F.2d 493 (6th Cir. 1977) (trial court committed reversible error in refusing to allow the defendant to cross-examine a government informer concerning his total compensation from other cases). *See also United States v. Williams,* 954 F.2d 668 (11th Cir. 1992) (reversing

28

defendant's conspiracy conviction, finding that the total amount of money which

the informant had received since becoming a paid government informant was relevant and

admissible to establish his motive for testifying, and should not have been excluded); *Bagley v.*

*Lumpkin*, 719 F.2d 1462, 1464 (9th Cir. 1983) (defendant's inability to cross-examine two

government witnesses concerning their "remunerative relationship with the government"

required reversal).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████    *See Leja*, 568 F.2d at 497 (trial judge's concern that if she permitted testimony on total

payments, she would also have to permit the government to respond with proof justifying the

payments of individual awards not involved in the case, was mitigated by defense counsel's

position that he did not desire to contest the justification or reasonableness of any other earned

fees).

██████████████████████████████████████████████████████

████████████

---

██████████████████████████████████████████████████████

## POINT VI

### ACTIONS OF OTHER LAW ENFORCEMENT AGENTS, THE DEFENDANTS' *BONA FIDE* LAW ENFORCEMENT EFFORTS, AND THEIR SERVICE RECORDS ARE HIGHLY RELEVANT TO THE DEFENSE AND SHOULD BE ADMITTED IN EVIDENCE

#### A.    Actions of other law enforcement agents

The government moves to preclude the defendants from introducing evidence that DEA agents other than Costanzo provided confidential information to private investigators in support of an "everyone speeds" or "everybody does it" defense.  ECF No. 113 at 25.  The government contends that the admission of evidence about the conduct of other DEA agents "would merely create a sideshow at trial" and require the government "to present rebuttal evidence on each factual scenario testified to by these other law enforcement officers."  ECF No. 113 at 26 n.6, 27. The government is wrong.

The defendants are not going to claim that if "everybody does it," it must be lawful. However, the conduct of other DEA agents plays a central, factual role in one of the most important fact patterns alleged in the Indictment. It is therefore essential to presenting a defense to the government's unfounded charges. To wit:

The Indictment charges that "on July 31, 2019, COSTANZO provided RECIO with information about the impending and confidential arrest plans of a high-level drug trafficker ("DEA Target-5") with whom RECIO was recently in contact[.]"  ECF No. 1 at ¶ 21(c).  ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████   That is false.



Young Decl. Exh. L at 40-42.



But there is more.



Young Decl. Exh. N at 5-6.

Young Decl. Exh. O at 1.





███████████████████████████████████

Young Decl. Exh. P at 1-4.

Both defendants are career law enforcement officers who have a constitutional right to defend themselves against the government's egregious misrepresentations. The government's broadly worded, non-specific motion *in limine* is in fact designed to prevent them from doing just that. ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████ This evidence cannot be swept under the rug.

The government manufactures two entirely fictional requirements for the Court to admit this evidence.  First, the government asserts that DEA agents can only pursue cooperation targets without violating DEA Standards of Conduct by doing so in consultation with prosecutors. Second, the government argues that criminal defendants can only introduce state of mind evidence if other individuals were committing the same criminal offense for which the defendants are charged.  The government cites no authority for these novel propositions.

The first is contradicted by a sworn statement from the government's own witness.

Young Decl. Exh. Q at 52 ███████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. The second

assumes the defendants' guilt and ignores that courts routinely allow evidence of the conduct of

others to prove a defendant's statement of mind.  No court has required that conduct to be

criminal because the entire point is that it is not.  *United States v. Bilzerian*, 926 F.2d 1285, 1285

(2d Cir. 1991) ("Although testimony concerning the ordinary practices in the securities industry

may be received to enable the jury to evaluate a defendant's conduct against the standards of

accepted practice, testimony encompassing an ultimate legal conclusion based upon the facts of

the case is not admissible[.]"); *United States v. Sheffield*, 992 F.2d 1164, 1169-70 (11th Cir.

1993) (reversing theft of government property conviction based on using military base materials

for personal fishing equipment, and finding that excluded evidence "pertaining to the custom of

using base facilities to produce authorized retirement gifts for high-ranking employees . . . was

relevant to [defendant's] state of mind when he ordered the production fishing lure molds . . .

because it had a tendency to make more probable [defendant's] claim that his request for fishing

lure molds was part of a legitimate base project."); *United States v. Runner*, Case No. 18-cr-0578

(JS), 2023 WL 3727532, at *14 (E.D.N.Y. May 30, 2023) (in fraud prosecution, denying

government motion to preclude expert testimony concerning industry practice, and noting

defendant's argument "that such testimony is relevant to intent because it 'will permit the jury to

compare aspects of the business which the [G]overnment contends were hallmarks of fraud to

standard industry practice[.]'").

In addition, Special Agent Costanzo and Mr. Recio's defense is that no bribes were ever exchanged; it is *not* that bribes were exchanged but are excusable because others were doing the same thing.  One of the elements of the charged crimes is that Mr. Recio intended to induce, and that Special Agent Costanzo was induced, to violate his official duties as a DEA agent.  Several courts have held that evidence of the custom and practice of others within a particular industry or organization is probative of both the scope of a public official's duties, and of his or her state of mind.  *United States v. Biaggi*, 853 F.2d 89, 97 (2d Cir. 1988) ("The scope of official conduct may be found, in addition, in 'established usage,' for '[i]n numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery.'"); *United States v. Defreitas*, 29 F.4th 135, 147 (3rd Cir. 2022) (citing *United States v. Birdsall*, 233 U.S. 223, 231 (1914)); *Bilzerian*, 926 F.2d at 1285; *Sheffield*, 992 F.2d at 1159-70; *Runner*, 2023 WL 3727532, at *14. Evidence of other DEA agents providing information to Mr. Recio or other defense attorneys as part of what the defendants understood to be lawful interaction between law enforcement agents and representatives of criminal targets is absolutely admissible for both purposes.

The government otherwise seeks a sweeping exclusion of all evidence "about the conduct of other agents or defense practitioners[,]" without specifying any particular evidence to which it objects.  ECF No. 113 at 26.  At a minimum, the Court should defer ruling on such an overly broad request until the evidence is presented at trial.

## B.     The defendants' *bona fide* law enforcement efforts are admissible

The government next argues that the defendants may not seek to establish innocence through proof of the absence of criminal acts on specific occasions.  ECF No. 113 at 27.  The

government fails to identify what "good act" evidence it seeks to preclude. This motion cannot be granted. *United States v. Fiumano*, No. 14 Cr. 0518, 2016 WL 1629356, at *7 (S.D.N.Y, April 25, 2016) (reserving decision where government did not identify specific "good acts" that should be precluded).

In general, "[a] defendant may not seek to establish his innocence ... through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa,* 913 F.2d 993, 1011 (2d Cir. 1990). However, good acts are admissible if relevant and probative of the issues in dispute. *See United States v. Levin*, 2016 U.S. Dist. LEXIS 3065, at *42-43 (S.D.N.Y. Jan. 8, 2016) (government sought to preclude "good acts" evidence, but court allowed it to be used solely to negate intent); *United States v. Garvin,* 565 F.2d 519, 522 (8th Cir. 1977) (evidence of correctly submitted applications for approximately 18 insurance policies admissible to show lack of intent to commit a scheme to defraud); *United States v. Shavin,* 287 F.2d 647, 654 (7th Cir. 1961) (evidence of properly submitted medical bills admissible to show lack of intent to defraud with later medical bills).

Moreover, evidence of a defendant's prior "good acts" may be relevant where (1) it is alleged the defendant has "always" or "continually" committed "bad acts," or (2) where such "good acts" "would undermine the underlying theory of a criminal prosecution." *United States v. Balboa*, No. 12-CR-0196, 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (citing *United States v. Damti*, 109 F. App'x 454, 455-56 (2d Cir. 2004)). Both exceptions apply here.

As to exception (1), the government has alleged a long-running bribery "scheme" founded upon Special Agent Costanzo's alleged violation of his lawful duties in exchange for money and other benefits. Indictment ¶¶ 30, 31. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████. It is plain that the government's case alleges "continual"

bad acts.

Regarding exception (2), the government's own theory of the case places squarely in

issue the lawful duties of a DEA agent. Accordingly, Special Agent Costanzo's history of

faithful DEA service will undermine the theory of the government's prosecution and is

fundamental to his defense. *See Balboa* at *3.

### C.   Evidence of defendants' service records, personal circumstances, and potential punishment

Just a few pages after the government moves *in limine* to admit background evidence to

explain relationships and events to advance its own case, ECF No. 113 at 5, it seeks to preclude

the defense from doing the same. ECF No. 113 at 29. This unfocused and overly broad attempt

to hamstring the defense is unwarranted.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a

complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks and

citations omitted). The right to present a defense is one of the "minimum essentials of a fair

trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), citing *In re Oliver*, 333 U.S. 257, 273

(1948). "It is a right which derives not only from the general fairness requirements of the due

process clause of the fourteenth amendment but also, and more directly, from the compulsory

process clause of the sixth amendment. It is a right which comprehends more than the right to

present the direct testimony of live witnesses, and includes the right under certain circumstances,

to place before the jury secondary forms of evidence, such as hearsay or, . . . prior testimony."

*Rosario v. Kuhlman*, 839 F.2d 918 (2d Cir. 1988).

The defense does not intend to introduce evidence of the defendant's relationship(s) with family members, witnesses, alleged co-conspirators, professional colleagues, and the CW to elicit sympathy or as an end-run around the character evidence rules. Relevant testimony will be offered in accord with the Federal Rules of Evidence. In this regard, the defendants' DEA performance evaluations, and the defendants' review thereof, are directly relevant to their state of mind. As Judge Gardephe noted in a recent case:

> The relevant evidence as to [defendant's] state of mind is the testimony concerning what Auerbach and Franklin said to [the defendant] in their meetings and in their telephone calls and also the documents that Auerbach and Franklin provided to [the defendant]. And that evidence, the testimony from Auerbach and Franklin as well as the documents – extensive documents that were received in evidence that were given to [the defendant]– *provided ample basis from which the defense can argue the defendant's state of mind*.

*United States v. Avenatti*, (S1) 19 Cr. 373 (PGG), 2021 WL 2809919, at *29 (S.D.N.Y. July 6, 2021) (emphasis added).

In other words, the defendants' performance reviews, evaluations, awards, career paths, what they saw and heard from colleagues, and all manner of feedback they received about their casework, is admissible because it is probative of their state of mind.

## POINT VII

### THE DEFENSE SHOULD BE PERMITTED TO INTRODUCE EXHIBITS

In a heavy-handed, broad request, the government seeks to preclude the defense from introducing "withheld" documents and future Rule 16 discovery documents. This request is meritless.

On August 30, 2023, the parties appeared before the Court in a discovery conference, after the defense identified and raised that the government had failed to produce over 90,000 pages of Mr. Recio's ESI for over a year, including relevant documents that the government deemed to be non-responsive. The government characterized the issues raised as "inadvertent

errors" and the following day, obtained a search warrant to re-review the 90,000 pages which it previously had in its possession.

On September 5, 2023, the government renewed its Rule 16 reciprocal discovery request to the defense, at which time the defense began assessing production of materials from the 90,000 pages (despite having received the documents from the government).

Two days later, the government produced a copy of the search warrant it had obtained for the very materials the defense otherwise would have produced *back* to the government as Rule 16 discovery. The search warrant rendered the government's request for Rule 16 discovery of those very same materials moot. In fact, the government has since put documents from this set of materials on its Exhibit List.  The proposition that the government could be unfairly disadvantaged in its trial preparation due to the defense not producing the same documents back to the government as Rule 16 discovery is nonsensical.

As to future Rule 16 discovery, the defense remains cognizant of its ongoing discovery obligations. Just as the government continues to produce discovery to the defense, so too will the defense reciprocate. Blanket preclusion at this time of unknown material is an unduly harsh sanction that need not be entertained by the Court.

## POINT VIII

### THE DEFENSE SHOULD BE PERMITTED TO CALL AN EXPERT WITNESS

The government argues that the defense should be precluded from calling expert witnesses because none have been noticed. The defense does not presently anticipate calling expert witnesses, hence none were noticed pursuant to Federal Rule of Criminal Procedure 16. However, the defense does anticipate calling, if the defense chooses to present a case, a summary witness pursuant to Federal Rule of Evidence 1006 regarding the voluminous financial records

provided in discovery and regarding any summaries prepared by the government in respect of such financial records. The ███████████, was timely disclosed on the Defense Witness List provided to the government on September 15, 2023. Additionally, in an abundance of caution, on September 29, 2023, the defense provided further detail about ███████ anticipated testimony, including his curriculum vitae, cases in which he has testified, and the records he is expected to summarize. Young Decl. Exh. R.

Even if ███████ were considered an expert rather than a summary witness, "excluding defendant's expert is a 'harsh sanction' that is 'not be to be imposed lightly.' Trial courts in this circuit have concluded that preclusion is generally not appropriate where a defendant's supplemental disclosures permit the Government to prepare a meaningful cross-examination." *See, e.g., United States v. Ahmed*, No. 12-CR-661 (SLT)(S-2), 2015 WL 1611947, at *2 (E.D.N.Y. Apr. 9, 2015). *United States v. Tuzman*, No. 15 CR. 536 (PGG), 2017 WL 6527261, at *11 (S.D.N.Y. Dec. 18, 2017) (citing *United States v. Ulbricht*, 858 F.3d 71, 117 (2d Cir. 2017)). *See also United States v. Healey*, 860 F.Supp.2d 262, 268 (S.D.N.Y. 2012) ("If a party fails to comply with Rule 16, the court may order discovery, grant a continuance, preclude the introduction of evidence, or enter any other just order.").

The government continues to pepper the defense with additional discovery (thousands of pages) and new exhibits (over a thousand presently). Surely the government can manage a disclosure almost a month prior to trial regarding testimony about the government's own discovery.

## POINT IX

### THE DEFENSE SHOULD BE PERMITTED TO OFFER ADDITIONAL PORTIONS OF COSTANZO'S ████████ ███████████████████████ TO AVOID MISLEADING THE JURY

After the government designated ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████. The defense was ready, willing and able to meet and confer to resolve the differences and we expected to do so. Instead, the government filed a motion *in limine*.

"[I]t is the trial court's responsibility to exercise common sense and a sense of fairness to protect the rights of the parties while remaining ever mindful of the court's obligation to protect the interest of society in the 'ascertainment of the truth.'" *United States v. Castro*, 813 F.2d 571, 576 (2d Cir. 1987). In this regard, statements offered in evidence must be taken together and in context. *See* Fed. R. Evid. 106; *see also Castro*, 813 F.2d at 575-76 ("Under this rule, the omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion."). In the spirit of common sense, contextualizing statements may be admitted either "contemporaneous[ly] or on cross-examination." *United States v. Williams*, 930 F.3d 44, 59 (2d Cir. 2019).

As per this guidance, the government should not be permitted to present unfairly selected and sculpted evidence or to splice concepts and relevant responses in utterly misleading ways. Admitting in evidence mere snippets or excerpts from ████████████████████████ perverts the truth-seeking process. The defense's proposed "counter-designations" provide essential context, and hence fall within Rule 401's liberal test of relevance.

44



████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████ ECF No. 113, Ex. B at 2. That is plainly a continuation of

relevant background.

      The government seeks to offer a████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████ ECF No. 113, Ex. B at

2, 4, 5.

      The government ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ *Id.* at 6.

      The government concedes ████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████

          ▪  ████████████████████████████████████████████████████████████

████████████████████████████████████

          ▪  ████████████████████████████████████████████████████████████

███████

          ▪  █████████████████████████████████████████████████



. They are necessary to allow the jury to fulfill its "role as factfinder [which] is a 'constitutional responsibility[.]'" *Dell'Aera v. James*, No. 12-CV-00344 (JFB), 2012 U.S. Dist. LEXIS 180290, at *33 (E.D.N.Y. Dec. 20, 2012) (quoting *United States v. Gaudin*, 515 U.S. 506, 514 (1995).

. *See, e.g., United States v. Quinones*, 511 F.3d 289, 311-12 (2d Cir. 2007) (citing cases); *United States v. Kohan*, 806 F.2d 18, 22 (2d Cir. 1986); *United States v. Parsons*, 141 F.3d 386, 390-91 (1st Cir. 1998); *United States v. Ibisevic*, 675 F.3d 342, 349 (4th Cir. 2012).

*See* ECF No. 113, Ex. B at 7.

Defense counsel has no intention of elongating the proceedings. ███████████

███████████████████████████████████████████████████████

█████████████████████████████████████████

**CONCLUSION**

For the reasons set forth above, Special Agent Costanzo and Mr. Recio request that the Court deny the government's motions *in limine*.

Dated: New York, New York
       October 4, 2023

MUKASEY FRENCHMAN LLP

 /s/ Marc L. Mukasey
Marc L. Mukasey
Torrey K. Young
Stephanie Guaba
Michael Westfal

570 Lexington Avenue
Suite 3500
New York, NY 10022
Tel: (212) 466-6400
Email: marc.mukasey@mfsllp.com

*Counsel for John Costanzo, Jr.*

GAINOR & DONNER

 /s/ Ronald Gainor
Amber Donner
Ronald Gainor

3250 Mary Street, Suite 405
Miami, Florida
Tel: (305) 537-2000

*Counsel for Manuel Recio*

47