UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOHN COSTANZO JR. and
MANUEL RECIO,

Defendants.

Case No. 22 Cr. 281 (JPO)

**SENTENCING MEMORANDUM OF MANUEL RECIO**

GAINOR & DONNER
3250 Mary Street, Suite 405
Miami, Florida
Tel: 305-537-2000
*Counsel for Manuel Recio*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

MR. RECIO'S HISTORY AND CHARACTERISTICS ........................................................ 2

   Childhood and Personal History ....................................................................................... 2

   Education And Career in Law Enforcement ..................................................................... 4

   Post Retirement ................................................................................................................ 5

   Continuing Contributions to the DEA ............................................................................. 5

   Comments By Family, Friends and Colleagues .............................................................. 8

NATURE AND CIRCUMSTANCE OF THE OFFENSE ................................................... 13

GUIDELINES ANALYSES ................................................................................................ 15

OBJECTIONS TO GUIDELINES CALCULATIONS ....................................................... 16

APPROPRIATE TOTAL OFFENSE LEVEL ..................................................................... 21

A DISPARITY RESULTS IF A GUIDELINE SENTENCE IS IMPOSED ....................... 21

CONDITIONS OF CONFIMENT COMPEL A VARIANCE ............................................. 23

FORFEITURE IS NOT WARRANTED ............................................................................. 23

OTHER CONSIDERATIONS ............................................................................................. 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**United States Cases**

*Honeycutt v. United States*, 581 U.S. 443 (2017) .......................................................................... 24

*Koon v. United States*, 518 U.S. 81 (1996) ..................................................................................... 1

*United States v. Barbarino*, 612 F. App'x 624 (2d Cir. N.Y. May 20, 2015) .............................. 17

*United States v. Blount*, 291 F.3d 201 (2d Cir. 2002) .................................................................. 20

*United States v. Djibo*, 730 F. App'x 52 (2d Cir. 2018) ............................................................... 24

*United States v. Johnson*, 964 F.2d 124 (2d Cir. 1992) ................................................................. 1

*United States v. McIntosh*, Nos. 14-1908, 14-3922, 17-2623, 2023 U.S. App. LEXIS 2131 (2d
   Cir. Jan. 25, 2023) .............................................................................................................. 23, 24

*United States v. Sampel*, 860 F. App'x 789 (2d Cir. 2021) .......................................................... 19

**Federal Statutes**

18 U.S.C. § 1343 ........................................................................................................................... 15

18 U.S.C. § 1349 ........................................................................................................................... 15

18 U.S.C. § 201(b)(1)(C) .............................................................................................................. 15

18 U.S.C. § 3553(a)(6) .................................................................................................................. 21

18 U.S.C. § 981(a)(1)(c) ............................................................................................................... 24

18 U.S.C. § 981(a)(1)(C) .............................................................................................................. 23

21 U.S.C. § 853(p) ........................................................................................................................ 23

28 U.S.C. § 2461 ........................................................................................................................... 23

28 U.S.C. § 2461(c) ...................................................................................................................... 23

**Other Authorities**

U.S.S.G. § 2B1.1 cmt. 3(A)(i) ...................................................................................................... 17

U.S.S.G. § 2B1.1(b)(1)(C) ............................................................................................................ 16

U.S.S.G. § 2B1.1(b)(1)(E) ............................................................................................................ 16

U.S.S.G. § 2C1.1 ..................................................................................................................... 15, 22

U.S.S.G. § 2C1.1(a)(2) .................................................................................................................. 15

U.S.S.G. § 2C1.1(b)(1) .................................................................................................................. 15

U.S.S.G. § 2C1.1(b)(2)(E) ............................................................................................................ 16

U.S.S.G. § 2C1.1(b)(3) .................................................................................................................. 16

U.S.S.G. § 3B1.1(b) ...................................................................................................................... 16

U.S.S.G. § 3B1.1(c) ...................................................................................................................... 19

U.S.S.G. § 3D1.2(d) ...................................................................................................................... 15

U.S.S.G. § 5K1.1 ........................................................................................................................... 22

**INTRODUCTION**

"The United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." *United States v. Johnson*, 964 F.2d 124, 125 (2d Cir. 1992). To the contrary, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

As described in more detail below, Manuel Recio is characterized by his family, friends and colleagues as a "beacon of strength and resilience," and a "hero" who is "devoted," and "generous," among so many other expressions. He is the patriarch of his family, providing support to his daughter and mother-in-law, and most importantly, the primary caregiver to his teenage son and ailing mother. Although he clearly and admittedly made mistakes in his actions that are the subject of this case, he has been and hopes to continue to be an inspiration and mentor to those around him.

Mr. Recio's lessor role in the offense conduct, his previous contributions to his family, friends, and the DEA, the promise of future contribution, including most importantly the care for his son, mother and others, plus the sentences of comparative defendants around the country, compel a sentence of no greater than 18 months incarceration consistent with the Judiciary Sentencing Information, all as described in detail below.

# MR. RECIO'S HISTORY AND CHARACTERISTICS

**Childhood and Personal History**

Born on November 8, 1968, in Jamaica, NY, Mr. Recio is one of four children by Antonio Recio and Maria Recio (nee Gill). Mr. Recio's father died in 2007 at the age of 69 after he suffered a heart attack. He was retired and previously worked as a chemist at Queens General Hospital in New York. Mr. Recio's mother is 82 years old and resides near Mr. Recio in Miami, Florida. Having previously worked in banking, she is retired. She suffers from depression, hypertension, high cholesterol, and digestive issues which has caused her to lose approximately 50 pounds in the past year. Mr. Recio is incredibly close to his mother, and she relies upon him for emotional and physical support, such as transportation to medical appointments and medication management. Mrs. Recio is not presently aware of this case.

Mr. Recio has one older sister and two younger sisters with whom he also shares incredibly close relationships. Mr. Recio stepped into the patriarchal role after his father's death, even walking one of his sisters down the aisle on her wedding day. His sisters have been immensely supportive of Mr. Recio during this case, one of whom attended every day of the trial, and another who flew in from her home in Switzerland to attend a portion of the trial. During the trial, they visited frequently and even cooked meals (for undersigned counsel too).

Mr. Recio married his college sweetheart, Lilly Recio (nee Marchini) on October 7, 1995, in Miami, Florida, although they are now divorced. They have two children. Siena Recio, who is 22 years old and a full-time college student at Florida International University studying to be a medical doctor, and ███████, who is 16 years old and a sophomore in high school. Seina resides with her mother, yet Mr. Recio has a very close relationship with her – he speaks to her

every day, visits her every week for dinners, lunches, exercising and going to family events, among other things. She insisted on attending a couple of days of trial to support her dad.

In part because Lilly routinely travels for work, ███ spends most of his days with Mr. Recio, who drives and picks his son up every day from school and attends all of his sports activities, which include weekly baseball practice and games, weekly at home hitting and catching practice, and baseball strength training three times per week. Mr. Recio coordinates his son's activities, including homework and social events, such as formals, proms and other school events, and attends all of his teacher parent conferences. Mr. Recio cooks many of ███ meals. Mr. Recio is a primary source of guidance and advice to both his daughter and son regarding all of life's challenges; they are aware of and are struggling with this case, especially the consequences to their dad's support.

Mr. Recio maintains a close relationship with his ex-wife and assists with caring for Lilly's 87-year-old mother who is undergoing chemotherapy, especially when his Lilly is traveling. Lilly has stated if Mr. Recio were to be sentenced to any term of imprisonment, she is unsure how she would balance her children's and her mother's needs with her employment obligations.

Mr. Recio is also the primary caregiver for his mom since his all of his siblings live out of state. He drives her to all her medical appointments and coordinates all her medical needs, such as communications with providers and insurance companies, and ensures that she takes her medications, currently eight different types. He manages her finances, including monitoring all her bills and household expenses. He manages her home necessities, such as her alarm system, and insurance.

**Education And Career in Law Enforcement**

After graduating high school in 1987, Mr. Recio enrolled in St. John's University in New York, transferring after completing his second semester to Florida International University. He received a Bachelor of Science in Criminal Justice. In 1997, Mr. Recio was hired by the DEA, working as a Special Agent from 1997 to 2003 in the Phoenix, Arizona office. He was promoted to Group Supervisor in 2008 and temporarily as an Assistant Special Agent in Charge (ASAC) in 2012 to 2014. From 2014 to 2016, Mr. Recio worked at DEA headquarters in Washington D.C. Mr. Recio was permanently promoted to ASAC in 2016. During his tenure at the DEA Mr. Recio was responsible for opening the Homestead, Florida resident office. He worked on some of the largest investigations the DEA has been involved in, including a plethora of cases in the Bahamas and the investigation into the Joaquin Guzman, aka, El Chapo.

As articulated by his ex-wife Lilly: "He excelled as an agent, handling some of the most significant cases within the DEA. In 2006, I had the privilege of witnessing him earn the prestigious Case Agent of the Year Award from the US Attorney's Office in Miami, in addition to receiving numerous outstanding performance accolades from the DEA nearly every year. His dedication and expertise led to multiple promotions, culminating in his appointment as the Assistant Special Agent in Charge of the Miami Office. In this role, he oversaw a team of approximately 75 individuals, and his passion for his work was evident in everything he did." . . . "One poignant example occurred in 2008 when tragically, an agent under his supervision passed away from a massive heart attack overnight. Without hesitation, Manny took it upon himself to support the grieving family, assisting with funeral arrangements and even personally ensuring they had food for the funeral gathering."

**Post Retirement**

Upon retirement from the DEA and through his newly formed company, Global Legal Consulting, LLC, Mr. Recio provided investigative and consulting services for defense attorneys. Mr. Recio's services included assisting criminal defendants and targets of investigations in cooperating with and providing information to the DEA. In addition to David Macey and Luis Guerra, Mr. Recio was engaged as a consultant by many attorneys to assist clients in cooperating with and providing information to the DEA, among other things. Those attorneys and law firms are some of the most respected firms in South Florida, including Greenspoon Marder, Law Offices of Gerald Greenberg (retired AUSA), Puglisi Carames Law, Law Offices of Frank Prieto, Akerman Law, Reizenstein Law, Law Offices of Deborah Baker, Robert Allen Law, Law Offices of Barry Wax, DLA Piper (George Karavetsos retired AUSA), Law Offices of William Barzee, Markus/Moss Law Firm (Todd Yoder), Franco Law Firm, and Law Office of Meyer & Nunez.

The vast majority of Mr. Recio's income for the years subject of the Indictment came from the foregoing attorneys and not Macey and Guerra, whose retention of Mr. Recio was but a small fraction of Mr. Recio's successful consulting business.

**Continuing Contributions to the DEA**

Although retired from the DEA, Mr. Recio continued to work closely with many DEA Agents, facilitating cooperation and providing useful information to the DEA, thus benefiting the client seeking to cooperate and the DEA. For example, during the Indictment period, Mr. Recio prepared and presented detailed reports to the following DEA Agents: SA ███████ (Miami), SA ███████ (Miami), SA ███████ (Miami), SA ███████ (Miami), SA ███████ (Cartagena), SA ███████ (New York), SA ███████ (Bogota), SA ███████

(Miami), and SA ███████ (Mexico). These reports related to information pertaining to

███████████████████████████████████████████████████████████.

Mr. Recio additionally provided agents with information he received from ███

████████████████████████████████████████████████████████

███████. This information included ██████████████████████████████████.

During the Indictment period, Mr. Recio provided the following agents with ██████████

████████████████████████████████████████████████████████

███████████████████████████.

There were also occasions where DEA agents would reach out directly to Mr. Recio

seeking his help on their cases. For example, on April 5, 2019, DEA agents from the DEA Puerto

Rico Office contacted Mr. Recio and asked him to help them locate ██████████████████████

██████. Mr. Recio was able to ████████████████████████████████████████

██████. In October 2019, Mr. Recio assisted ████████████████████████████████

████████████████████████████. Mr. Recio would regularly act as a conduit

between DEA agents and individuals already arrested on Provisional Arrest Warrants (PAW)

facilitating ██████████ which furthered the DEA mission.

As described by Frank Prieto, a defense attorney who has worked with Mr. Recio from

2019 through present: "I have known Manny for approximately 15 years, first in his official

capacity as an agent with the DEA and then as an investigator after he retired. In the last 5 years,

I had the opportunity to work closely with Manny as my investigator on several matters; Manny's

insight and work ethic resulted one of our clients cooperating with the DEA and the United States

in a matter out of the Eastern District of Texas. Manny's ability to extract the most useful

information in a digestible format for the case agents and the US Attorneys working the case

proved invaluable. Manny's hard work and direct participation with our client resulted in the government stating on the record at the client's initial appearance, that he [the client] was the 'most prolific cooperator' that they have ever seen. Manny's assistance in preparing the client and producing reports for the government, ultimately led to ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. These results were common on the cases where Manny was acting as a consultant/investigator."

Also as described by Valentina Marroquin, the daughter of a client of Mr. Recio and Macey: "I first learned about Manny through my mother's attorney at the time, David Macey. . . . He didn't make promises about outcomes that would get my hopes up; he was adamant about the importance of my mother establishing open communication with the Government even though it might not result in a positive outcome for her; he was sensitive to our emotions around the situation, and he kept us grounded in the reality that my mother was a Defendant in a criminal case and the odds were not in her favor. . . . My mother did not have a foundation of trust established with the AUSA or the Agents on her case, and Manny was direct and honest with her about how it was her responsibility to fix that. My mother was very resistant to ████████████████ ████████████████████████████████████████████████████ ████████. ████████████████████████████████████████████████ ████████████████████

In January 2019, Mr. Recio met with a DEA agent and an AUSA regarding the possibility of the DEA meeting with an associate of a client that Mr. Recio was representing. The individual was a significant ████████████████████████████████████████████████████. Through Mr. Recio's client, Mr. Recio was able to ████████████████████████████



████████████████████████████████████████████████████. As
a result of this meeting, the ███████████████ to U.S. authorities in Miami, Florida.

On October 14, 2019, Mr. Recio was able to ████████████████████████
████████████████████████████. From January 2019 through May
2019, Mr. Recio coordinated with █████████████████████████████

████████████████████████████████████████████████████

████████████████. The information led to ████████████████████

████████████████████████████████████████████████████

████████████████████.

**Comments By Family, Friends and Colleagues**

The outpouring of support for Mr. Recio from family, friends and colleagues is a testament
to Mr. Recio. These testimonials of Manny's character are attached as Composite Exhibit A of
which some are highlighted as follows:

- **Lilly Recio (ex-wife of 25 years)**

  Manny's contributions to his family are profound.

  He devoted over a decade to coaching my son's baseball team, all while maintaining
  a demanding full- time position with the DEA. The children under his guidance
  revered him for his motivational spirit and leadership qualities. Spending countless
  hours practicing with the team twice a week and coaching their games, Manny
  fostered a sense of camaraderie among the players and their families, creating a
  supportive community.

  Despite the challenges he faces, he remains steadfast in his devotion to caring for
  his elderly mother, who relies solely on him due to her advanced age and medical
  conditions. His selflessness extends to my own mother as well, who, at 87 years old
  and battling Multiple Sclerosis, relies on Manny for assistance with household
  tasks. Even in the wake of our divorce, Manny's unwavering commitment to her
  well-being is a testament to his extraordinary character.

I am in awe of Manny's resilience and determination to persevere through each day and continue to be the father that he is to our two kids. The suffering he has endured throughout this ordeal has been profound. He has depleted all his life and retirement savings and accrued substantial debt from legal fees. Furthermore, all his bank accounts and credit cards have been closed because of the investigation, plunging him into further despair and anguish as he faces sentencing.

- **Siena Recio (daughter)**

  My father loved being a DEA Special Agent for 22 years, and I watched him go to work with enthusiasm every day. When I was in grade school, my father came to my school every year to conduct a drug awareness program for all the students in my school. He also volunteered to do this at other schools in Miami.

  Even in the face of challenges and adversity, my dad remains a beacon of strength and resilience. His determination and tireless work ethic serve as an inspiration to me every day.
  The prospect of him spending an extended period away from us fills me with anguish and sorrow. His absence would leave a void that could never be filled, not only in our family but in the community, he has served with dedication and compassion for years.

- **Inez Maria Recio (oldest sister)**

  Often, [Manny] had to step up as the man of the family, as our father worked four jobs to provide for us.

  If I were to encapsulate his essence in one word, it would undoubtedly be "family." Over the years, he has been a steadfast presence, offering unwavering support and standing by us through thick and thin.

  Manny has also assumed the role of a father figure since our father's sudden passing in 2007. With our mother residing in Miami and facing declining health, Manny has taken on the sole responsibility of caring for her. As my other sisters and I do not reside in Florida, Manny shoulders the burden of managing our mother's affairs, including her finances, medical appointments, household chores, and various aspects of her daily life.

- **Maria Recio (middle sister)**

  [Manny] has always been there for me, being my teacher and tutor to relationship coach, trainer, financial advisor, protective big brother, boss, but most of all my friend and confidant. My brother is and will always be the solid rock in our family. The family voice of reason, and next to my father, the kindest and most honest man I know. He possesses a strong sense of duty and commitment, which he applied in

his career with the DEA for many years. He is an excellent father to my niece Siena and my nephew Lucas.

- **AnaMaria Recio (youngest sister)**

A thousand years it would take for me to repay the service my brother has provided for our family. That man is my hero, in more ways than I could possibly explain, and not just for me; our entire family is indebted to Manny. The best way I can describe him: when you need something, even before you know you need it, Manny is there to provide.

When I was in the hospital, crowning with my daughter coming into the world, my brother was not there. He was tracking down my deadbeat husband, literally dragging him out of bed to be there to welcome our child into this world. A child for whom I had to spend thousands of dollars to gain custody, a process in which my brother was monumental in supporting me. I have since been happily remarried, living in Switzerland with my daughter who now speaks three languages and plays a musical instrument -all thanks the efforts and generosity of my brother, Manuel Recio.

Manuel Recio is a man of action. If there is a problem, he will fix it at all costs. Imagine for a moment being in his position, responsible for not only your own family but all of your extended family as well. Any time one of his three sisters find themselves in need, Manny is there. When our mother is in need, Manny is there. When his daughter is in need, Manny is there. When his son is in need, Manny is there. When a friend is in need, Manny is there.

Without fail he has been the bedrock to keep our family from falling off the cliff.

- **Matthew Bennett (nephew)**

When I was eight years old, I witnessed my grandfather (Manny's father) fall to a seizure that unfortunately took his life. I remember Manny being there trying to comfort me and taking me out to get food and ice cream. This may not seem like a big deal but he could have easily mourned with the rest of the family but he chose to try to take a child's mind off of the situation. He continues to put others first and holds high family values.

- **Richard Correa (cousin)**

He helped me through turbulent battles with alcoholism and depression which included multiple suicide attempts. He was always there for me, even opening his home to me on multiple occasions. I can honestly say I would probably not be here today if not for him.

- **Barry Wax (Defense Attorney who contracted Manny from 2019 through 2023)**

  Manny was the investigator who had already been working with the lawyers for the three defendants[.]

  We worked together on several other matters, including a health care fraud case which had 10 million pages of documents disclosed by the government during discovery. I cannot overstate how crucial he was to the preparation of that case. Simply put, I couldn't have done it without him.

  His inner strength and coping skills enabled him to endure the pressure and hardship, especially during the trial.

  Whatever sentence you impose, I want you to know that I will again employ Manny as an investigator.

- **Sabrina Puglisi (Defense Attorney who contracted Manny from 2019 through 2024)**

  I first met Manny Recio in 2018 during a white-collar fraud trial where he served as the lead investigator to three defendants with a joint defense agreement. He came highly recommended for his investigative skills honed through prior law enforcement experience.

  Manny is a remarkable individual, a devoted father, and a loyal friend. Despite facing legal challenges, he never wavered in his dedication to his clients, showing remarkable empathy amidst personal turmoil.

- **Diane Carames (Defense Attorney who contracted with Mr. Recio from 2019 through 2024)**

  After that case, our firm started to retain Mr. Recio as an investigator on several of the firm's other cases. He exhibited the same level of knowledge and commitment on each and every case. Often, he refused to charge the clients more money for the extra work he performed on their cases.

  Manny always went above and beyond any monetary retainer, which tells me that it wasn't all about the money for him.

  When my husband had a heart attack, Manny was the first one to offer to help with his care. When I was a victim of fraud, Manny was the first one to offer his investigative services to me free of charge. What is most notable, is that Manny acted in this manner despite going through his own personal legal process.

- **David Kubilion (Defense Attorney who contracted with Mr. Recio from 2019 to 2020)**

  I hired Mr. Recio to assist me on some of my cases that needed investigatory work. His work was exemplary. His commitment to excellence was quite evident in his work. He was the consummate professional.

- **Valentina Marroquin (Daughter of a client that contracted with Mr. Recio and Macey)**

  I believe, uniquely to Manny, the same qualities that made him successful at DEA are the qualities that make him the great father, friend, and person he is - he has a high degree of emotional intelligence and he doesn't allow stressful situations to get the best of him; he is clear on his priorities; he is a stable, grounding force in his own life and radiates that to others; he follows through on his commitments and he is quick and direct to own up to it when he falls short; he is committed to being actively involved in the lives of those around him - his children, his ex-wife and mother of his children, his mother, his sisters, and his close friends.
  After my mother's release, we struggled with personal family situations. Manny volunteered his time to physically be with us when we needed it. As we navigated challenging situations with my brother's addiction, Manny provided counsel as a parent and a friend, over and over again.

- **Retired DEA Special Agent Joseph Kilmer (worked with Mr. Recio for many years in Miami)**

  In March of 2012, we did have an agent who suffered a medical emergency while on an assignment in Great Inagua, Bahamas, which was one of the distant outer islands. By the time the agent was transported from Great Inagua to the Turks and Caicos Islands, and then to a Trauma Center in Hollywood, Florida, he was declared brain dead.

  For approximately the next 18 days, Manny and I were together for a portion of every day as we continued to assist the agent's family, plan the funeral and burial, etc. Manny took care of keeping the DEA bosses informed of the situation as it continued to unfold, and coordinate with DEA Headquarters so that all relevant parties were up to date. The only day we were not together was when I met with the family, and Manny decided, on his own, to spend approximately 7 hours at his home taking dozens and dozens of photos of the agent and his co-workers and putting together a music video to be shown at the funeral in honor of this agent. I was truly in awe of the end product, and the time Manny had put into it; it meant a great deal to the family.

- **Retired DEA Special Agent Marcos Olaniel (worked with Mr. Recio since 2004 and remain friends)**

  I had the pleasure of meeting Manny Recio in the spring of 2004. I was a young agent with just two years on and had been recently transferred to the DEA Miami Field Division from Chicago, Illinois on a medical transfer. Manny at the time was working the most significant and complex cases I had ever seen in my very short career. Manny was not only an excellent case agent but a role model and trainer.

  Manny would eventually become a first line supervisor and I would have the honor to work for him in 2008. Manny's supervisory style was so unique that agents from other groups often sought his guidance, sharing their ideas and challenges in hopes of leveraging his insights. He epitomized not just a supervisor, a role abundant in the DEA, but a true leader of both men and women.

  Manny would end up coaching my oldest son who is a catcher just like Manny's son. Manny's leadership and coaching translated perfectly on the diamond field with young baseball players, and he would inspire them to be their best, just like he did with the DEA agents that he supervised on the streets.

## NATURE AND CIRCUMSTANCE OF THE OFFENSE

Mr. Recio was convicted of conspiracy to bribe a public official and to commit honest services fraud, bribery of a public official, and honest services fraud. Mr. Recio accepts the jury's verdict and his clear errors in judgment.

Yet despite the government's innuendo, there was no evidence that Mr. Recio counseled a client or a target to evade efforts by the DEA, or that Mr. Recio passed to a client or a target DEA sensitive or confidential information. In fact, the evidence established at trial was that in most instances, Special Agent Costanzo provided Mr. Recio with the name and contact information of a DEA case agent so that Mr. Recio could initiate his client's cooperation through that agent. GX 339, 344, 347.

The government's innuendo regarding Mr. Recio's assistance in ████████████ ██████████ is similarly lacking factual basis. The evidence at trial established that Mr. Recio

was not involved in nor assisted ███████████████████████████████. To

the contrary, the evidence adduced at trial established that Mr. Recio was working with DEA agent

████████████████████████████████. MR 133. Additional evidence

adduced at trial also established that Mr. Recio's last contact with ██████ was on July 16, 2019,

via text when Mr. Recio communicated with ██████ about meeting with ██████ to discuss his case

after ██████'s 12-day vacation, because ██████ did not believe "he had any problems" in the

United States. GX 703. During this communication, ████████████████████████████

████████████████████████████████████████████████

████████████. MR 143T. After this date, ████████████████████

████████████████████████████████████████████████

████████████████████████████. Testimony from government

witness Special Agent ████████████████████████████████████

████████████████████. Tr. Transcript, 10-27-2023 at 442 D.E. 185. Additionally,

several ████████████████████████████████████████████

████████████. *Id.* at 425. Local ████████████████████████████

████████████. *Id.* at 410. On August 20, 2019, SA ████████████████████

████████████████████████████████████████████████

████████. MR 902. Despite Mr. Recio's best efforts, ████████████████████████.

Thus, the evidence establishes that Mr. Recio was not in any way connected to ████████

████████████████████ and that the opposite is true - Mr. Recio attempted to ████████

████████████.

Regarding the SARC memorandum which Mr. Recio co-authored and forwarded to his

Yahoo account, there was simply no proof at trial that Mr. Recio ever attempted to recruit any of

14

the individuals discussed in the memo, or that Mr. Recio otherwise used any of the information contained therein. The emailing of the SARC memo was an unfortunate, completely isolated event. Ironically, as the Court may recall, it was the government during this case that inadvertently disclosed the memo to the public. That inadvertence lacks intention applies to Mr. Recio as well.

## GUIDELINES ANALYSES

Applying the November 1, 2023, Guidelines Manual, the Presentence Investigation Report calculated a total offense level of 29, a Criminal History Category of I, and a range of 87 - 108 months' imprisonment.

The PSR grouped Counts One, Three, Four, and Five into one group pursuant to U.S.S.G. § 3D1.2(d). PSR ¶ 49. Using U.S.S.G. § 2 C1.1, the PSR calculates the Guidelines range as follows:

**Base Offense Level**: **12**

The guideline for a violation of 18 U.S.C. § 201(b)(1)(C) (Count 3), 18 U.S.C. § 1349 (Count 4), and 18 U.S.C. § 1343 (Count 5) is U.S.S.G § 2C1.1. Because the defendant was not a public official, the base offense level is 12. U.S.S.G. § 2C1.1(a)(2), PSR ¶ 51.

**Specific Offense Characteristics**: **+2**

Because the defendant was involved in more than one bribe, a two-level enhancement is warranted, pursuant to U.S.S.G. § 2 C1.1(b)(1), PSR ¶ 52.

**Specific Offense Characteristics**: **+8**

Because the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense is approximately $98,750, an eight-

level enhancement is warranted, pursuant to U.S.S.G. §§ 2C1.1(b)(2)(E) and 2B1.1(b)(1)(E), PSR ¶ 53.

**Specific Offense Characteristics: +4**

Because the offense involved a public official in a high-level decision-making or sensitive position, specifically, Costanzo Jr. was an employee and supervisor with the DEA, a four-level enhancement is warranted, pursuant to U.S.S.G. § 2C1.1(b)(3), PSR ¶ 53.

**Adjustment for Role in the Offense: +3**

The defendant was a manager or supervisor and the criminal activity involved at least five participants. Specifically, the defendant recruited or attempted to recruit other participants and cooperating witnesses, was involved in the planning or organization of the criminal activity and profited more than [Edwin Pagan] and [John Costanzo, Sr.]. As such, three levels are added. U.S.S.G. § 3B1.1(b), PSR ¶ 56.

**Total Offense Level: 29**

## OBJECTIONS TO GUIDELINES CALCULATIONS

**Specific Offense Characteristics: +8**

Mr. Recio objects to the conclusion that there should be a +8 level increase under Section 2B1.1(b)(1)(E) corresponding to a loss total of $98,750. Instead, the appropriate increase is a +4 level under Section 2B1.1(b)(1)(C), corresponding to a loss total of $23,250. The $23,250 figure represents the total of all checks Mr. Recio wrote from the Global Legal Consulting account.

Application Note (A)(iii) & (iv) contained within in Section 2B1.1, titled Loss, under subsection (b)(1) applies to the determination of loss under subsection (b)(1) and at (iii) defines "Pecuniary Harm" meaning "harm that is monetary or that otherwise is readily measurable in

money." Application Note 3(A)(iv), titled "Reasonably Foreseeable Pecuniary Harm," further defines as harm "that which the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."

Thus, "[U]nder the Sentencing Guidelines, a defendant is responsible for the 'reasonably foreseeable pecuniary harm' resulting from his fraud. U.S.S.G. § 2B1.1 cmt. 3(A)(i). This may include the harm stemming from *the reasonably foreseeable acts* and omissions of his co-conspirators. *See id.* § 1B1.3(a)(1)(B)." *United States v. Barbarino*, 612 F. App'x 624 (2d Cir. N.Y. May 20, 2015) (emphasis added).

Here, Mr. Recio was not involved in, not responsible for, nor could he have reasonably foreseen all but $23,250 in payments. The $23,250 represents checks that Mr. Recio wrote from his Global Legal Consulting account to (1) Mr. Costanzo's father (in the amount of $2,500), PSR, ¶19, and (2) JEM Solutions (two checks for a total of amount of $20,750), PSR, ¶¶ 34 and 35.

The remainder of the payments the evidence at trial established Mr. Recio was not involved in, not responsible for, nor could he have reasonably foreseen as follows:

1. $70,000 given by Pagan for Special Agent Costanzo's home purchase and legal fees.

    a. The unrebutted testimony at trial established that Mr. Recio was not connected in any way to the home purchase or the legal fees.

        i. Testimony by Pagan, Tr. Transcript, 11-06-2023 at 1724-1760 D.E. 197 (E.g., p. 1737 - Q. And did that account have any money you received from Manny Recio? A. No.; p. 1738 - Q. And did Manny Recio give you any money to reimburse you for that $50,000? A. No.; p. 1760 - Officer Pagan, just one more question about the $20,000 Was that -- the

$20,000 you gave to Ms. Rueda, was that $20,000 a bribe payment from Manny Recio to John? A. No.; p, 1794 - Now, Mr. Pagan, you never called Manuel Recio once between October 2018 and December 2019, did you? A. It doesn't seem right, but I'll take your word for it.; p. 1797 - But you did have some text messages with Manuel Recio, correct? A. Correct. Q. Now, those text messages were about sports and double-dating, correct? A. Correct.)

    ii. GX 708, p. 3 (Establishing one communication between Mr. Recio and Pagan during the relevant time period of October 1, 2018, to November 30, 2019.)

    iii. Testimony of Susanna Rueda, Tr. Transcript, 11-02-2023 at 1238 D.E. 193 (And, you know, it would be your testimony that Manny Recio was not involved in any way in the purchase or financing of that property? A. Not that I'm aware of, no.)

    iv. Testimony of Eglin Polo, Tr. Transcript, 11-06-2023 at 1642-1647 D.E. 197 (No payments or deposits from Mr. Recio related to the $50,000 nor $20,000 payment)

2. $5,000 related to Macey's purported payment for renovations to Special Agent Costanzo's home.

    a. The unrebutted testimony at trial established that Mr. Recio was not connected in any way to the payment for renovations to Special Agent Costanzo's home.

  i. Testimony of Juan Carlos Victorero, Tr. Transcript 11-2-2023 at 1258

   D.E.193 (You never met Manny Recio? You don't know him? A. I don't

   know who he is.)

There was no evidence that Mr. Recio had any knowledge of Pagan's loan to Special Agent Costanzo of $70,000 for his home down payment or legal fees or that Macey paid for Special Agent Costanzo's renovations. There were no communications of any kind between Mr. Recio and Special Agent Costanzo, Pagan, Macey, nor any other person about these funds. As noted above, the evidence at trial was to the contrary.

Mr. Recio's loss amount calculated under the Sentencing Guidelines should be limited to $23,250.

**Adjustment for Role in the Offense: <u>+3</u>**

Mr. Recio objects to +3-point adjustment for role in the offense, that he was a manager or supervisor in the criminal activity that involved at least five participants whom he allegedly recruited, including cooperating witnesses.

To be subject to a role enhancement pursuant to U.S.S.G. § 3B1.1(c), Application Note 4 requires this Court to analyze the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, and the degree of control and authority exercised over others. The evidence at trial did not establish that Mr. Recio was an organizer, leader, manager or supervisor, and Mr. Recio's position is otherwise accounted for in his Guidelines calculation.

"To qualify for this enhancement, a defendant . . . may properly be considered a manager or supervisor if he exercised some degree of control over others involved in the commission of the offense." *United States v. Sampel*, 860 F. App'x 789, 791 (2d Cir. 2021) (citation omitted). A

defendant may also be considered a manager or supervisor if he "play[ed] a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Blount*, 291 F.3d 201, 217 (2d Cir. 2002) (citation omitted).

Both in its Response to Post-Trial Motions, D.E. 220, and at the Sentencing Hearing of Special Agent Costanzo, Exhibit. B, Transcript of Hearing on April 23, 2024, the government established Mr. Recio's lack of leadership role:

> During his time as Group Supervisor for Group 10, Constanzo developed close relationships with Macey and Guerra, two criminal defense attorneys based in South Florida." (Tr. 612, 619-620). While these relationships were partly personal, (TR. 1733-34), since at least 2015, up to and through October 2018, Constanzo provided both Macey and Guerra improper information and access regarding DEA cases. (GX 325, 337: Tr. 611-618; 620-635. For example, in April 2015 Constanzo and Macey exchanged text messages in which Constanzo told Macey he was trying to close [a] deal for Macey, who in turn, told Costanzo: Close the deal or not, the thought and effort puts you off the chart." (GX 337). Similarly, in 2018, Costanzo and Guerra met ███████████████, who at the time was an informal ███████████, to ask him to recruit a DEA target for Guerra, (Tr.611-618). In October 2018, Recio was preparing to retire from the DEA to begin a second career as an investigator for Defense attorneys. (Tr. 634-635) Costanzo knew that Recio was leaving the DEA and introduced Recio and Guerra (GX 255).

Response to Post-Trial Motions at 4.

> Costanzo controls the information, which is the most valuable thing. . . . Costanzo is directing, managing, and supervising the flow of information and the way in which that information benefits him, but benefits others as well.

Sent. Tr. at 13.

Furthermore, this Court acknowledged at Special Agent Costanzo's sentencing the lack of clarity regarding "who recruited whom[.]" Sent. Tr. at 15. In response to the Court's question "Are there other things I should be thinking about in terms of relative culpability" between Special Agent Costanzo and Mr. Recio, the government responded: "Costanzo had cultivated the relationships with the attorneys. And it was Costanzo who introduced Recio to Guerra and Macey, [if] you looked at every single person who joined this conspiracy, and they all had one thing in

common – Costanzo was their connection." Sent. Tr. at 30-31.

## APPROPRIATE TOTAL OFFENSE LEVEL

Accordingly, Mr. Recio objects to the conclusion that the Total Offense Level is 29. Loss under Paragraph 53 of the PSR should be reduced to a +4 from +8 reflecting $23,250 rather than $98,250. Excluding also the +3 point adjustment for Role in the Offense in Paragraph 56, Mr. Recio would qualify for an additional –2 points off under USG 4C1.1 as a Zero Point Offender.

The cumulative effect of these modifications would result in a Total Offense Level 20 which corresponds to a guideline imprisonment range of 33-41 months.

## A DISPARITY RESULTS IF A GUIDELINE SENTENCE IS IMPOSED

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"

Applying the Judiciary Sentencing Information available on the Sentencing Commission's website, https://www.ussc.gov/guidelines/judiciary-sentencing-information, "[d]uring the last five fiscal years (FY 2019-2023), there were 12 defendants whose primary guideline was § 2C1.1, with a Final Offense Level of 20 and a Criminal History Category of I, after excluding defendants who received a § 5K1.1 substantial assistance departure."

For the 10 defendants (83%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was **20 month(s)** and the median length of imprisonment imposed was **20 month(s)**. For all 12 defendants in the cell, the average sentence imposed was 21 month(s) and the median sentence imposed was 20 month(s)."

To facilitate analysis of sentences of similarly situated defendants, the services of Mark H. Allenbaugh, Chief Research Officer and Co-founder of SentencingStats.com, Inc. (SSINC) were retained. SSINC and Mr. Allenbaugh, a former staff attorney in the Office of General Counsel to the Sentencing Commission, provide statistical analyses of the U.S. Sentencing Commission sentencing, Bureau of Prisons and Bureau of Justice Statistics data and other pertinent data sources. Mr. Allenbaugh's Curriculum Vitae and Report is attached as Composite Exhibit C.

Mr. Allenbaugh's analysis includes the following:

- Over the last five fiscal years, over two-thirds of all sentences imposed under U.S.S.G. § 2C1.1 (excluding those who received a U.S.S.G. § 5K1.1 departure) have consistently been below the applicable advisory sentencing range.

- Over the last five fiscal years, the average sentence imposed on those receiving a below range sentence (excluding those who received a U.S.S.G. § 5K1.1 departure) has consistently been **less than 24 months**.

- A sentence of **24 months' imprisonment** is **greater than** the majority of sentences imposed on offenders with the same sentencing profile as calculated by Mr. Recio, i.e., sentenced under U.S.S.G. §2 C1.1, Total Offense Level of 20, Criminal History Category I, without any U.S.S.G. §5 K1.1 departure.

- A sentence of 24 months' imprisonment is a typical sentence with the same sentencing profile as calculated by PSR, modifying only Mr. Recio's role in the offense.

- As a former federal agent, Mr. Recio can expect more onerous conditions of confinement as he will be more susceptible to abuse in prison, and as a result, could find himself spending a significant time in the Special Housing Unit (SHU).

The sentencing data thus compels a finding that a sentence consistent with similarly

situated defendants is no more than 2 years.

## CONDITIONS OF CONFIMENT COMPEL A VARIANCE

Mr. Allenbaugh further opined on the conditions of confinement that will impact Mr. Recio if incarcerated. As a former DEA agent, Mr. Recio will experience more onerous conditions of confinement than inmates generally - he stands a higher chance of being placed in protective custody, i.e., in a Special Housing Unity (SHU) as a result of his prior law enforcement status.

Furthermore, as of May 2, 2024, 105 of BOP's 189 facilities are at or over their respective rated capacities. So bad are the conditions at the BOP, the Government Accountability Office recently placed it on its high-risk list because of staffing problems and leadership changes raising concerns about inmate and staff safety.

## FORFEITURE IS NOT WARRANTED

In paragraphs 44 and 45 of the Indictment, the government sought forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C) and Title 28 U.S.C. § 2461(c), of all property traceable to the commission of the offenses, or, if any of the property being subject to forfeiture could not be recovered, the government sought forfeiture pursuant to Title 21 U.S.C. § 853(p) and Title 28 U.S.C. § 2461 for the value of the forfeitable property. D.E. 1.

However, this Court has already ruled that Special Agent Costanzo must forfeit the full amount of the proceeds determined to have been received, $98,250. D.E. 242. As noted by the Second Circuit in *United States v. McIntosh*, Nos. 14-1908, 14-3922, 17-2623, 2023 U.S. App. LEXIS 2131, at *4-5 (2d Cir. Jan. 25, 2023): "[i]n *Honeycutt v. United States*, the Supreme Court held that a different forfeiture statute precluded joint and several liability among conspirators. 581 U.S. 443, 137 (2017). We conclude and the government now concedes that Honeycutt's reasoning

23

applies with equal force to the forfeiture statute at issue here, 18 U.S.C. § 981(a)(1)(c). Accordingly, the forfeiture order is vacated, and the issue is remanded to be recalculated consistent with the understanding that Honeycutt prohibits joint and several liability under 18 U.S.C. § 981(a)(1)(c)."

Pursuant to *McIntosh*, forfeiture is similarly improper against Mr. Recio. Additionally, Mr. Recio is not subject to forfeiture because he did not receive any of the proceeds at issue. "Forfeiture . . . is limited to property the defendant himself actually acquired as the result of the crime." *Honeycutt v. United States*, 581 U.S. 443, 454 (2017). *See also United States v. Djibo*, 730 F. App'x 52, 60-61 (2d Cir. 2018) (Forfeiture order vacated because forfeiture is limited to property the defendant himself actually acquired as the result of the crime.). Substitute asset forfeiture is similarly unavailing. *Id.*

The government is not entitled to forfeiture against Mr. Recio.

## OTHER CONSIDERATIONS

Mr. Recio requests that the Court take into consideration the matters raised in his post-trial motions. As the Court ruled on similar motions of Special Agent Costanzo at his sentencing hearing, Mr. Recio hereby responds to certain findings by the Court that have applicability to Mr. Recio:

- Although Mr. Recio stipulated to the admission of government exhibit 520, he did not stipulate nor otherwise agree to the improper testimony in respect of that exhibit, regarding which a contemporaneous objection was made, see Reply to the Government's Opposition to Defendant's Post-Trial Motions, D.E. 230 at 8, nor to the government's closings arguments, regarding which the government asserted not only that the exhibit was an

admission of guilt, but acknowledged that it was the *only direct evidence of such guilt*. *See* Reply at 9 (quoting closing arguments by the government).

- The Court noted that the subpoena returns "[o]n their face simply show invoices that somehow relate to certain text messages. The invoices could theoretically be invoices from DEA contractors or some other valid expense." Sentencing Tr. at 8. But throughout the trial the government argued that the invoices were fraudulently created to legitimize a bribe payment. *See, e.g.*, Trial Transcript, Nov. 27, 2023 at 1913 and 1920, and that the conversation within the text message that discussed the running of names in the NADDIS database was an admission that the invoice was in fact related to a bribe (as opposed to what this Court conjectured). *Id*. at 913. There was nothing simple about the government's argument. It was crafted and designed to use the production by Mr. Recio's corporation against Mr. Recio personally. A use unequivocally in violation of Mr. Recio's Due Process rights as articulated in *Braswell* and its progeny.

**CONCLUSION**

Mr. Recio hereby requests that this Court determine that his Sentencing Guidelines are a Total Offense Level 20 which corresponds to a guideline imprisonment range of 33-41 months, and that the Court vary downward to a sentence of no greater than 18 months.

Dated: May 4, 2024
New York, New York

Respectfully submitted,

<u>s/Amber Donner</u>
Amber Donner
Ronald Gainor
Gainor & Donner
3250 Mary Street
Suite #405
Miami, Florida 33133
Email: amber_donner@hotmail.com
*Counsel for Manuel Recio*